[Civ. No. 6401. First Appellate District, Division One.—December 5, 1928.]

CITY OF OAKLAND (a Municipal Corporation), Appellant, v. SALVATORE DE GUARDA et al., Respondents.

Leon E. Gray, former City Attorney, Preston Higgins, City Attorney, and Homer W. Buckley, Deputy City Attorney, for Appellant.

Heller, Ehrman, White & McAuliffe and F. Whitney Tenney for Respondents.

BUCK (G. F.), J., *pro tem.*—This is an action to recover against a defendant street contractor and a defendant surety company upon a statutory surety bond given by

the defendants for the faithful performance of a contract for street improvement in the City of Oakland under the provisions of the Street Improvement Act of 1911 (Stats. 1911, p. 730).

Two counts are pleaded in the complaint; the first being on behalf of the City individually, and the second by the City as trustee for the property holders in the assessment district.

The defendant contractor, De Guarda, made default and judgment was rendered against him and no appeal taken by him. The defendant, National Surety Company, interposed a general and special demurrer to the two causes of action stated in the complaint. The demurrer to the first cause of action was overruled with leave to answer. But defendant's demurrer to the second cause of action was sustained without leave to amend. Defendant, National Surety Company, having failed to answer as to the first cause of action within the time allowed, judgment was entered against the defendant on the first cause of action; and as to the second cause of action, the plaintiff not having been granted leave to amend its complaint, judgment was given in favor of the National Surety Company on the second cause of action. No appeal was taken by the National Surety Company from the judgment entered against it on the first cause of action. And this appeal is taken by plaintiff from the judgment against the plaintiff and in favor of the defendant surety company upon the second cause of action.

In the second cause of action facts are alleged showing valid proceedings by the City under the Street Improvement Act of 1911, leading up to the entering into a contract between the City and defendant, De Guarda, for the performance of street work, some of which work, as shown by the resolution of intention and other proceedings, made a part of the contract, was to be paid for by the City out of the general fund and the balance of the work "shall be and is hereby made chargeable against and shall be assessed upon" a certain described district in pursuance of the statute. The contract in question is set out in the complaint; and it is further alleged in both causes of action that the defendant, De Guarda, executed a bond to the City of Oakland with the defendant, National Surety Com-

pany, as surety and payable to the City in the sum of $10,000, conditioned for the faithful performance of said contract, and which provided that the defendants are jointly and severally bound to the City of Oakland, which bond provided also by its terms that "if the defendant contractor shall well and truly perform all the covenants and conditions and agreements of said contract then said bond shall become void, else to remain in full force and virtue." It is then alleged in both causes of action that "said defendant, De Guarda, never did any work under the terms or in pursuance of the said contract or in performance of the work specified in said contract—and said plaintiff made repeated demands upon defendant, De Guarda, and repeatedly requested defendant Surety Company to commence and complete said contract but both the said defendants utterly failed, neglected and refused to commence and complete said contract." It is then alleged in both causes of action that the said delinquency was reported to the city council and facts are stated showing that the city council undertook all the proceedings provided for in the statute for the letting of a new contract covering the same work to a new and different contractor, which contract was in all respects properly performed and that after it had been performed under the direction and to the satisfaction of the superintendent of streets "the City Engineer of the City made a diagram of the property affected and benefited by said work and improvement as described in the Resolution of Intention and to be assesssed to pay the expenses thereof." This being the same resolution of intention which was the basis of the contract signed by the defendant De Guarda and for the faithful performance of which the defendant Surety Company executed its bond. The complaint then alleges that "said diagram showed each separate lot, piece or parcel of land, the area in square feet of each of such lots, pieces or parcels of land and the relative location of the same to said work, all within the limits of the assessment district and that thereafter and after the contractor had fulfilled the contract to the satisfaction of the Superintendent of Streets, he later proceeded to estimate upon the lands and lots within said assessment district the benefits arising from said work and to be received by each such lot, portion of such lot, piece

or subdivision of land, and thereupon made an assessment to cover the sum due for work performed and specified in said contract.'' And it is further alleged that under the entire contract the total amount assessed against the district for the work to be paid for by the property holders of the district in proportion as their property was benefited thereby, was the sum of $40,076.92. While under the contract entered into by the defendant De Guarda, and for the performance of which contract the defendant Surety Company became surety, the total amount to be assessed against the lots in the assessment district in proportion to the benefits conferred was the total amount of $36,538.26. Consequently, the property holders benefited by the improvement in question were under the new contract assessed for $3,538.66 more than they would have been had the defendant De Guarda well and truly performed the contract entered into between De Guarda and the City for the performance of which the defendant Surety Company became surety. Judgment for said sum of $3,538.66 was, therefore, demanded by plaintiff as trustee for such property holders. And, as already stated, the demurrer of the Surety Company was sustained to this second cause of action without leave granted plaintiff to amend. Both respondent and appellant agree that the single question involved on this appeal is ''Can the City of Oakland as trustee for the property owners who are assessed upon performance of the contract by the second contractor for a larger sum than would have been assessed if the first contractor had performed the contract, recover for the benefit of such property owners this excess cost?''

In the case at bar the bond sued upon is given under the provisions of section 15 of the Street Improvement Act of 1911, and is to be distinguished from the bond providing for a forfeiture given under section 10 of the same act, as construed in the case of *Mill Valley* v. *Bonding etc. Co.*, 68 Cal. App. 372 [229 Pac. 891]; and also from the bond to protect laborers and materialmen given under the provisions of section 19 of the act, as construed in the case of *Los Angeles S. Co.* v. *National Surety Co.*, 178 Cal. 247 [173 Pac. 79].

In each of the above cases the surety company sought to escape liability by contending for a strict construction of

the rule laid down in section 2836 of the Civil Code, to the effect that a surety cannot be held beyond the express terms of his contract. But in each of the above cases the appellate court held the surety company liable under their bond by applying the principle laid down in section 2837 of the Civil Code, to the effect that "in interpreting the terms of a contract of surety the same rules are to be observed as in the case of other contracts." And in the Mill Valley case the court availed itself of the following rules of interpretation: "The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein and must be construed with the statute (citing cases)." And also, "a contract must receive such an interpretation as will make it lawful and operative if it can be done without violating the intention of the parties. (Civil Code, section 1643.)"

In the case of *Los Angeles S. Co.* v. *National Surety Co., supra,* the following rule of construction was made applicable to a surety bond given under section 19 of the Street Improvement Act, in connection with the performance of work of a public character which was for the benefit of specified individuals. "The surety is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee and with respect to whom the latter is a mere trustee." (Citing *Equitable Surety Co.* v. *United States,* 234 U. S. 448 [58 L. Ed. 1394, 34 Sup. Ct. Rep. 803, see, also, Rose's U. S. Notes].) And in applying the foregoing principle of construction to the bond given by the surety company in the case of *Los Angeles S. Co.* v. *National Surety Co., supra,* the court also used the following language (citing many cases): "The covenant in the bond should be read in the light of the statute, the purpose of which was to protect those who furnished labor and materials for work described in the contract and not the particular engagements under which the work is done." And in the case at bar, if we are to be guided by the foregoing established rules of interpretation, we should first avail ourselves of "the light of the statute" and determine therefrom, if we can, what was the purpose of the covenant in

the bond by which the defendant surety company insured the faithful performance of the contract, and for whose protection such covenant was entered into by the defendant surety company.

Also, as stated in the case of *Callan* v. *Empire State Surety Co.*, 20 Cal. App. 483, at page 489 [129 Pac. 978, 980] : "Section 2837 of the Civil Code provides that in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. As was said by Mr. Justice Lorigan in *Sather Banking Co.* v. *Briggs Co.*, 138 Cal. 724 [72 Pac. 352], 'While it is true that a surety cannot be held beyond the express terms of his contract, yet in interpreting the terms of a contract of suretyship the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that by an implication something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed. The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that a contract shall not be reasonably interpreted as other contracts are.' (See, also, to the same effect, *Pratt* v. *Matthews*, 24 Hun [N. Y.], 387.)"

Also, as stated in the case of *Turner* v. *Fidelity & Deposit Co.*, 187 Cal. 76, at page 85 [200 Pac. 959, 962] :

"In this case the Surety Company stands upon a purely technical defense, and while it is true that the rule is in its favor that it may rely upon the strict terms of its contract, there is no reason in law or equity why the same liberality of construction and interpretation of those terms should not be applied as in construing any other contract.

"In the matter of the obligations of corporations organized to execute surety bonds and securities as a business there is a growing disposition in the courts to hold such sureties to their obligations unless there has been some material departure from the conditions of the agreement. (21 R. C. L., p. 1160; Ann. Cas. 1912B, 1087.)"

See, also, *Hunstock* v. *Royal Securities Corp.*, 51 Cal. App. 769, at bottom of page 773 [197 Pac. 763, 765].

In the case at bar it is the contention of the respondent Surety Company that the covenant in the bond reciting that the bond was given for the faithful performance of the covenants of the contract was applicable only to that portion of the work to be paid for by the City, and was consequently for the sole benefit of the City of Oakland individually, as set out in the first cause of action, because the City of Oakland was the only obligee expressly mentioned by name in the bond. But if the foregoing rules of interpretation, applied in the cases cited above, be applied in the case at bar, and the bond be construed in the light of the statute in pursuance of whose provisions it is given, and in the light of the contract as a whole to protect the performance of which the bond was given, and "with a view to effecting the object for which it was given, and to accomplish the purpose for which it was designed," and that this rule of interpretation be applied for the purpose of ascertaining whether or not in truth and in fact the City of Oakland was intended to be the sole and only beneficiary of the covenant of the bond insuring faithful performance of the contract—if this be done, it would seem to follow that the same result may be obtained in the case at bar as was obtained in the cases cited above where the respective surety companies, when sued by the actual beneficiaries of the bond who paid for protection under the bond, were required to respond to the obligations clearly assumed by such surety companies under their contracts of suretyship.

From the language of the statute as it must be construed, it appears that the amount of the bond for the giving of which the Surety Company receives compensation, is based not simply upon the contract price of the work that is to be paid for by the City alone, but the amount of the bond and the consequent risk assumed by the Surety Company thereunder is based upon the contract price of the entire work done under the contract, including both the work which is for the special benefit of the City as a whole and the work which is for the special benefit of the individuals owning the specific properties within the assessment district. And, consequently from this provision alone of the

statute relating to the amount of the bond, a fair inference may be drawn that the obligations of the bond are intended to be for the benefit not only of the city individually, but also for the benefit of the property holders within the assessment district who, under the contract, bear the greater portion of the burden of the contract, the faithful performance of the whole of which is intended to be protected by the bond as construed in the light of the provisions of the statute and in the light of the contract itself. But it is respondent's contention that notwithstanding the foregoing facts stated and admitted as true in the complaint that no recovery should be had on behalf of the property holders because "the sole beneficiary of the bond was the City of Oakland . . . and no mention is made of the property holders in either the bond or the contract, and the only damage respondent obligated itself to pay was the damage suffered by the city." And in this connection respondent contends "that in the case at bar the liability under the bond extends only to the city in that the only purpose appearing from a reading of both the bond and contract is that of protecting the city from any damage it might suffer."

It is undoubtedly true, as contended by learned counsel, that "it is not so nominated in the bond" given by the Surety Company in so many words or by express language that the property holders "were to be beneficiaries." Nor is it "so nominated" by the express terms of the statute. But defendant's bond should be construed, not only in connection with the contract which it was given to protect, but also in connection with the statute in pursuance of which the contract was entered into and the bond given. Also the rights and obligations of the parties herein should be considered in the light of established principles of equity. As to the contention of the respondent that the property holders were and are not in law and equity the rightful beneficiaries of the contract and the bond given by the defendant Surety Company holding the Surety Company bound that the said contract should be in "full force and effect" in the event that the defendant contractor "should fail to perform the covenants of such contract": At the outstart sections 1 and 2 of the statute provide that the city council of each municipality "is hereby invested with

jurisdiction to order to be done thereon any of the work mentioned in this act under the proceedings hereinafter described," and that "whenever the public interest and convenience may require the City Council is hereby authorized and empowered to order the whole or any portion" of the streets of the City to be graded, etc. And throughout the balance of the statute and in every portion of the statute pertaining to the carrying on of the work and raising money to pay for the work it is clearly recognized and impliedly expressed that the property holders owning property abutting on the work have a special interest in the work, and under the law this special interest in the work is based upon the presumption that their particular property being specially benefited by the work, as such property holders they are rightfully burdened with the obligation to bear the expense of the work upon a proper performance of the work. Section 3 recognized the equitable doctrine that cost of the work should not be assessed against any property holder where the council has excepted from the frontage "any of said work already done upon a street to the official grade" and section 3 provides that "the lots and portions of the lots fronting upon said excepted work already done shall not be included in the frontage assessment for the class of work over which the exception is made"; and section 4, in recognition of the equitable doctrine that the expense assessable on any lot should not exceed one-half of the total assessed value of the lots and lands assessed, makes special provision that the expense in such a case may be made "chargeable upon a district which the City Council shall . . . declare to be the district benefited by such work or improvement"; and section 5 of the act, in further recognition of the special interest of the abutting property holders in the work, makes special provision that notices of the passage of the resolution of intention shall be "posted along the line of said contemplated work or improvement at not more than 300 feet in distance apart, . . . and thereafter all persons shall be deemed to have notice of the date of the completion of such posting." Section 6 provides that after the posting and publication of the notice of the resolution then "any *owner of property* liable to be assessed for said work may make written protest against the proposed work and against the extent of the district to be assessed, or both." And in fur-

ther recognition of the interest possessed in said work by the property holders, section 6 makes special provision for the time and place for the hearing of such protests and provides that if "the City Council finds that such protest is made by the owners of more than one-half of the area of the property to be assessed for said improvements, no further proceedings shall be taken for a period of six months from the date when said protest was received, . . . " And section 7 specifically provides that the council may not be deemed to have acquired jurisdiction to order the proposed improvements until "fifteen days after the date of the completion of the posting of said notice of improvement. . . . " And sections 11 and 12 provide that after the work is ordered and the contract awarded that notice "of such award of contracts shall be posted for five days" and shall be published in a certain manner. And in further recognition of the interest of the property holders owning "frontage of lots and lands liable to be assessed" it is provided that "within ten days after the first publication of said notice of said award," that the owners of three-fourths of said frontage may "elect to take said work and enter into a written contract to do the whole work at the price at which the same has been awarded." Sections 13 and 14, in recognition of the agency of the City in furthering the work, provide that there shall be further advertising in the event that the original bidder neglects to enter into the contract. Section 15, after the foregoing recognition in the statute of the interest in the work possessed by the property holders and the duty on the part of the City to expedite the commencement of and the carrying on of the work to the advantage of the parties interested therein, provides that "all contractors, contracting owners included, shall, at the time of executing any contract for street work execute a bond to the satisfaction and approval of the Superintendent of Streets of said City, with two or more sureties and payable to such City in the sum of not less than twenty five per cent of the amount of the contract, conditioned for the faithful performance of the contract." It was under the provisions of the foregoing section that the bond of the defendant Surety Company herein was executed, and the sections immediately following clearly show that the property holders by virtue of the interest they have in the work and the

further fact that they, and they alone, ultimately and directly pay for the work including, of course, as a part of the cost of the work the remuneration which the defendant National Surety Company received for executing its bond, it is quite apparent that in equity at least such property holders should be deemed to be the persons beneficially interested not only in the contract under which the work is done but also in the bond given to secure and insure the faithful performance of the contract; and section 16 indicates and demonstrates how highly interested in the work such property holders are to and to what extent by virtue of their interest therein they can waive defects in any of the proceedings "relating to said improvement." And as indicating the trusteeship of the City in the performance of the work being done as aforesaid for the benefit of the property holders who are interested therein by virtue of their frontage holdings, section 18 provides that the superintendent of streets is authorized in his official capacity to make all written contracts and to receive all bonds authorized by this act and to do any other act either express or implied that pertains to the street department under this act; and the city council may by ordinance prescribe general rules directing the superintendent of streets and the contractor as to the materials to be used and the mode of executing the work and "the assessment and apportionment of the expenses of all of such work, or improvement shall be made by the Superintendent of Streets in the mode prescribed by this Act." Section 19 provides for the execution of the bond to be "made to inure to the benefit of any and all persons, companies or corporations who perform labor on, or furnish materials to be used in said work or improvement." This bond is for the direct benefit of the materialmen and is only indirectly for the benefit of the property holders, and it is for the benefit of the property holders in that it induces a larger class of materialmen to compete in the work. And as conclusive and ultimate proof of the fact that in law and equity the property holders are the persons deemed to be beneficially interested in the performance of the work, it is provided in subdivision 1 of section 20 that, "The expenses incurred for any work authorized by this act . . . shall be assessed upon the lots and lands fronting thereon, except as otherwise in this act specifically pro-

vided; each lot or portion of a lot being separately assessed, in proportion to the frontage, at a rate per front foot sufficient to cover the total expense of the work." And other subdivisions of the same section provide in detail for the equitable assessment of such cost upon the property and owners benefited by such work. Section 26 in further recognition of the interest possessed in said work by the property holders who are specifically benefited thereby, provides that, "The owners, whether named in the assessment or not, the contractor, or his assigns, and all other persons directly interested in any work done under this act, or in the assessment, feeling aggrieved by any act or determination of the superintendent of streets in relation thereto, or who claim that the work has not been performed according to the contract in a good and substantial manner, . . . shall, within thirty days after the date of the warrant, appeal to the city council, as provided in this section, by briefly stating their objections in writing, and filing the same with the clerk of said city council," and special provision is made for the hearing of these objections and the correction of the errors indicated therein; and in further recognition of the interest of the property holders in the work and in indorsement of the fact that such property holders must be specifically benefited thereby, section 27 provides that the contractor or his assign may sue the owner of land, lots or portion of lots assessed and recover the amount of any assessment remaining unpaid with interest thereon at the rate of ten per cent per annum until paid, and in addition to cost may recover attorney's fees and that notwithstanding that any suit may be settled or a tender may be made before recovering in said action. And section 29 provides that, "The court . . . shall have power to adjudge and to decree a lien against the premises assessed and to order said premises to be sold on execution, . . . "

From the foregoing it is, therefore, evident that in equity the property holders who pay for the work and whose interests are protected in the performance of the work by the provisions of the statute are the beneficiaries of the work and hence are the beneficiaries in equity, at least, of the bond given to secure the faithful performance of the work. This equitable interest is well recognized by the authorities. Volume 1, fourth edition, of Elliott on Roads and Streets,

page 756, paragraph 646, states in general language as follows: "Street improvement statutes usually provide that a bond shall be required to secure the faithful performance of the contract, but the municipality would doubtless have power to require a bond without any specific grant of authority. It has been held that such a statutory provision is mandatory and for the benefit and protection of the property owners who have to pay for the improvement." Among other cases cited by the author as authority is the case of *Barker* v. *Southern Const. Co.*, 20 Ky. Law Rep. 796 [47 S. W. 608], which uses the following language at page 608: "It seems to us that the statute requiring security for the faithful performance of the contract is mandatory, and manifestly for the benefit and protection of those who have to pay for the improvements, because it is well known that it is possible for work to be apparently done in the manner required, and yet in fact great frauds may be perpetrated by contractors; and if no security had been taken, the loss would fall upon those who had to pay for the improvements because, if the improvements prove worthless, the property owners would again be liable to assessment for additional improvements." In the case at bar the property holders had a valid and subsisting contract with the defendant De Guarda under the provisions of the statute. As the result of the wrongful default of the contractor the property holders under the provisions of the statute were obliged to accept and be obligated under the contract from Tobin which contract required them, under the provisions of the statute, to pay out a large sum in excess of what they were required to pay out under the contract with De Guarda if the same had been performed. And under the bond given by the National Surety Company at their expense they were intended to be protected against any loss which would consequently follow from not having the work done under the first contract.

In other words, it is the clear intent of the statute in this case not only to recognize but to give full force and effect and proper protection to the beneficial interest possessed by the property holders in the performance of the work to be done under the contract entered into in pursuance of the provisions of the statute. This is recognized as already indicated in the various provisions of the statute itself. The

City, through its council and its street superintendent, is required by the statute to protect at all stages of the proceedings and recognize this special interest that the property holders have in the contract. And that they are deemed to be beneficially interested is made evident by the very effective remedies given to the contractor to enforce against property holders, both by personal judgment and by a special lien on their property, the rights of the contractor if he faithfully performs his contract. It would, therefore, follow as a matter of right and equity that the duties of the contractor towards the property holder as well as the obligation to those who have gone surety for the contractor should be commensurate with and in direct proportion to the rights which they have against the property holder. In other words, the obligations of the contract as well as of the bond given to secure it should be enforceable for the benefit of the property holders who are made to bear and shoulder the corresponding obligations of the contract. In enforcing the obligations of the property holder the City, under the statute, for the benefit of the contractor, acts as the agent and assistant of the contractor and in fairness and equity it would seem that the property holder should be permitted to, at least in a formal way, avail himself of the same use of the City and its good offices. Surely the same public interest which evoked the original action of the City in passing its resolution of intention to do the work would be a sufficient warrant to protect the individuals for whose benefit the work is done and whose interest in the work is specifically recognized at every stage of the progress of the work under the statute. The mere failure on the part of the legislature to state *in haec verba* that the property holders are interested in the work and benefited thereby does not in a court of equity prevent a fair inference to be drawn from the language and purpose of the statute that such beneficial interest does as a matter of fact exist.

In the case at bar it cannot be said that the contract expressly provides that the defendants have no liability under the bonds. By the explicit language of the bonds both defendants are liable to someone if the contract is not performed and by fair and equitable implication they are liable to those interested in the contract. In substance the only contention of the defendant National Surety Company here

is, not that the Surety Company is not liable under the bond, but that the Surety Company is not liable to the plaintiff herein suing as trustee for the benefit of the property hold-ers. But equity will not permit the execution of a trust to fail for want of a sufficient trustee, for equity looks to the intent rather than to the form and regards that as done which ought to be done and goes beneath the mere external form to the substance of things for the purpose of making its remedies more complete, thereby awarding and securing to the person beneficially interested the remedy to which he is entitled by the principles and doctrines of equity. It would seem that the property holders whose rights under the De Guarda contract were taken away by the failure to well and truly perform such contract and to their damage as already indicated by the enhanced sum they were required to pay for the same work under the statute, that these property holders should have all the resources of a court of equity at their command to pursue their remedy against a defendant who, for a full and fair consideration insured the performance of the violated contract. (1 Pomeroy's Equity Juris., 4th ed., 360–380.)

In Missouri cases cited and relied upon by counsel (*St. Louis* v. *Wright Contracting Co.*, 202 Mo. 451 [101 S. W. 6]; *St. Louis* v. *Wright Contracting Co.*, 210 Mo. 491 [109 S. W. 6]; *St. Louis* v. *Anderson*, 229 Mo. 181 [138 Am. St. Rep. 414, 129 S. W. 528]; *City of St. Joseph* v. *Rackliffe-Gibson Const. Co. et al.* (Mo. App.), 203 S. W. 223) it does not appear that the statute construed by the learned court contained the numerous provisions enacted in our statute above showing the direct and tangible interest taken by the City through its council and street superintendent in the performance of the contract and the doing of the work for the benefit of the property holders and the direct interest taken by the City for the benefit of the contractor in requiring the property holder to bear the burdens and pay the expenses of the work, all of which should properly vest in the property holder sufficient correlative rights to enable them to avail themselves of the agency and trusteeship of the City in the enforcement of the statutory bond given to the City for the proper protection of the property holders under the contract in question.

In the case at bar the same reasoning and the same rule is applicable as was announced by our supreme court in the case of *Los Angeles S. Co.* v. *National Surety Co.,* 178 Cal. 247 [173 Pac. 79], where the court used the following language taken from the United States supreme court in the case of *Equitable Security Co.* v. *McMillan,* 234 U. S. 448 [58 L. Ed. 1394, 34 Sup. Ct. Rep. 803] : "The surety is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee."

Also in the case of *City of Philadelphia (to Use of Rose Brick Mfg. Co.)* v. *Stewart,* 195 Pa. 309 [45 Atl. 1056], it was held that a City may sue in its own name to use of the persons for whose security it was given, on a bond given it by a contractor for City work conditioned that he shall pay for labor and material furnished therefor and shall comply with an ordinance for protection of subcontractors as well as laborers and materialmen. It was held in that case that "the city recovers on its legal title though the money may ultimately go to the use of plaintiffs."

Also in the case of *City of Alpena* v. *Title Guarantee Ins. Co.,* 158 Mich. 678 [123 N. W. 536], it was held that a City contracting for a public work and requiring the contractor to give a bond conditioned on his paying for the labor and materials used in the work, may sue on the bond for the use of materialmen. And the same reasoning which gave this protection to the laborers and materialmen would enable the property holders in this case to avail themselves of the suit brought in their behalf by the City of Oakland, as was done in the case cited, by having the action brought in the name of the City of Alpena.

But it is the contention of the respondent "that the obvious result achieved in the event the city is allowed to recover in the capacity of trustee would be that any sum recovered would go in the general fund; lose its identity and the real parties damaged would not be benefited thereby." But this unfortunate conclusion can be based only upon the assumption that the City of Oakland, through its proper officers, would attempt to hold for its own use and benefit money which it had received for the use and benefit of

"the real parties damaged" who were rightly and justly entitled to the money. The defendant Surety Company cannot be permitted to urge in its own defense any such assumed wrongful conduct on the part of the City of Oakland.

The judgment, therefore, is reversed, with direction to the court below to allow plaintiff to amend the complaint as it may be advised.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 2, 1929, and the following opinion then rendered thereon:

THE COURT.—█ The appellant has asked for a rehearing, complaining particularly of that portion of the opinion heretofore filed which states that the complaint is uncertain in that it does not state in what manner the City became trustee for the property owners, and that portion of the opinion which intimates that the complaint should be amended so as to state the names of the various property holders, together with the amounts of their assessments and the amounts which they would be entitled to receive from the respondent. The portions of the opinion referred to were not necessary to the decision. If the City is correct in its theory that it is a trustee for the property holders within the assessment district it became such by reason of the statute under which the proceedings were instituted, and it was not necessary for the pleader to allege matters of law. As the City is the only obligee under the bond, both by reason of the statute and by reason of the wording of the bond itself, the City is the only party entitled to sue for a breach of the bond, unless by statute this right has been given to the property owners. No statute conferring such privilege upon the property owners has been called to our attention.

It is therefore of no concern of the Surety Company as to who are the legal owners of the property within the assessment district, as to the amount of the respective assessments or as to the amount that they would individually be entitled to receive from the Surety Company. It was not necessary to join the property owners as parties plaintiff (secs. 369, 382, Code Civ. Proc.), and the allegation that the City was

suing on behalf of the legal owners of the property within the assessment district is an allegation of a matter of public record which may be ascertained by the Surety Company upon a search of the public records. It would serve no purpose to have these parties named in the complaint and it would be equally futile to require the City to specify the amount of the respective assessments and the amount which the individual owners would be entitled to receive under the judgment.

The petition for rehearing is, therefore, denied, but all the last paragraph of the opinion heretofore filed commencing with the words ''But as a matter of abundant caution'' and closing with the words ''on the second cause of action'' is stricken out.*

*[REPORTER'S NOTE.—The portion of the opinion referred to above, which was stricken from the original opinion, is as follows:]

''But as a matter of abundant caution it may be conceded that defendant Surety Company's demurrer for uncertainty is good to the extent that the complaint does not state ''in what manner plaintiffs became trustee for the owners of the property'' and that the error of the trial court consists in its sustaining such demurrer without leave to amend so as to permit the plaintiff to state fully in what manner and to what extent and for whose use and benefit the plaintiff became such trustee; and that the plaintiff should be permitted to amend to state, if it can, the names of the various property holders in the assessment district together with the amounts of their respective assessments and the amounts that they would individually be entitled to receive from respondent in compensation for the damages suffered respectively by them as the result of the liability assumed by defendant surety company upon its bond. This would make the complaint more clearly certain and as a result thereof not only the defendant but the city and the property holders also would be more fully protected by any judgment that might be rendered against the defendant Surety Company on the second cause of action.''