[No. 31013.   Department Two.   July 21, 1949.]

THE STATE OF WASHINGTON, *on the Relation of Harvey I. Hunter et al., Plaintiff*, v. THE SUPERIOR COURT FOR SNOHOMISH COUNTY, *Charles R. Denney, Judge, Respondent.*[1]

*John C. Richards* and *Max Kosher,* for relators.

*Clarence J. Coleman* and *Thos. G. McCrea,* for respondent.

[1]Reported in 208 P. (2d) 866.

GRADY, J.—This cause is before the court on certiorari to review an order of the superior court for Snohomish county adjudicating public use and necessity for appropriation of a tract of land by the Snohomish county fire protection district No. 7.

The respondent is a fire protection district organized pursuant to statute. Its governing body is a board of three commissioners. Authority to own and acquire property by eminent domain is derived from Rem. Rev. Stat. (Sup.), §§ 5654-115, -116, -118 [P.P.C. §§ 540-29, -31, -35] and Rem. Supp. 1947, § 5654-120, and in so far as necessary to be considered they are as follows:

§ 5654-115: "Fire-protection districts created under this act shall be political subdivisions of the state and shall be held and construed to be municipal corporations within the provisions of the laws and Constitution of the State of Washington. . . . Such a district shall constitute a body corporate and shall possess all the usual powers of a corporation for public purposes as well as all other powers that may now or hereafter be specifically conferred by law."

§ 5654-120: "Any Fire-Protection District organized under this act shall have authority:

"(1) To lease, own, maintain, operate and provide fire engines and all other necessary or proper apparatus, facilities, machinery and equipment for the prevention and extinguishment of fires, and protection of life and property;

"(2) To lease, own, maintain and operate real property, improvements and fixtures thereon suitable and convenient for housing, repairing and caring for fire fighting equipment; . . .

"(7) To do all things and perform all acts not otherwise prohibited by law."

§ 5654-116: "Such fire-protection districts shall have full authority to carry out the objects of their creation and to that end are authorized to acquire, purchase, hold, lease, manage, occupy and sell real and personal property, or any interest therein . . . to exercise the right of eminent domain . . . and to do any and all lawful acts required and expedient to carry out the purpose of this act."

§ 5654-118: "The taking and damaging of property or rights therein or thereto by any such fire-protection district to carry out any of the purposes of its organization are

hereby declared to be for a public use and any such district organized under this act shall have and may exercise the power of eminent domain to acquire any property or rights therein or thereto either inside or outside the district, for the use of such district. . . . "

The district commissioners considered sites upon which to construct a fire station to house the equipment with sufficient additional adjacent space for the training of volunteer firemen. They chose a tract of land owned by appellants containing 1.52 acres, upon which there was a four-room dwelling house. At the hearing, respondent conceded that the easterly three hundred feet of the property of relators would be sufficient, and the order limits the property to be taken to that amount of land.

The relators contend: (a) that the respondent should be limited to present needs in the amount of land acquired; (b) that the respondent is without authority to acquire land by eminent domain for use as a training field for firemen; and (c) that the action of the board of fire commissioners of respondent in selecting the property of appellants as a fire station site, instead of other nearby vacant property, was so arbitrary and capricious as to amount to a constructive fraud.

■ (a) In the selection of a site for a fire station, the commissioners had the authority to determine the area of land reasonably necessary to accommodate a suitable building to adequately house and maintain the fire equipment then owned by the district, and such additional equipment as they might fairly anticipate would be required to meet future needs. They could anticipate a gradual increase in the population of the district and the consequent need for more equipment. The statutes do not limit the amount of property that may be acquired by eminent domain, and therefore reasonable necessity, considering present as well as probable future needs, was the standard by which the commissioners were guided. This, of course, does not mean that the commissioners are permitted to speculate as to the possible needs at some remote future time. The proper limitation is the orbit of reasonable anticipation of future needs.

These principles are recognized in *State ex rel. Patterson v. Superior Court,* 102 Wash. 331, 173 Pac. 186; *Port of Everett v. Everett Imp. Co.,* 124 Wash. 486, 214 Pac. 1064. See, also, 18 Am. Jur. 736, 738, Eminent Domain, §§ 109 and 111; 29 C. J. S. 888, Eminent Domain, § 92.

(b) The commissioners concluded that the district should acquire sufficient land for a training area in addition to that necessary for the building. For a time at least, the firemen would be volunteers, and it was deemed expedient that they should receive training in the use and maintenance of the fire-fighting equipment.

We are in accord with the contention of relators that statutes granting powers to such a municipal corporation as a fire district and statutes relating to eminent domain are strictly construed, but it is not necessary that such statutes cover in minute detail everything which may be done in order to carry out their purposes. Even though a power may not be expressly given in specific words, if its existence is reasonably necessary in order to effectuate the purposes intended, such power may be implied. This subject has been referred to in *State ex rel. School Dist. No. 56 v. Superior Court,* 69 Wash. 189, 124 Pac. 484; *State ex rel. Harlan v. Centralia-Chehalis Electric R. & Power Co.,* 42 Wash. 632, 85 Pac. 344, 7 L.R.A. (N.S.) 198, and *State ex rel. King County v. Superior Court,* 33 Wn. (2d) 76, 204 P. (2d) 514.

We decided in the first of these cases that the taking of land for a playground for pupils attending school was for a public use, and in the second case that authority of a street railway company to condemn land for a right of way "and other corporate purposes" carried with it the power to condemn land not adjacent to the right of way for the purpose of developing water power to create power for the street railway system, and thus enable it to render service at a cheaper rate. The third case case denies the existence of the claimed implied power to condemn property, but we refer to it because it points out factors proper to consider

in determining when a power may or may not exist by implication.

We think the public interest in the services of trained firemen is reasonably comparable to the interest we decided it had in recreation grounds for school children and in facilities to provide cheaper transportation. The necessity for trained fire-fighting personnel to carry out the purposes of a fire protection district must be conceded, and we think the statutes by clear implication authorized the commissioners to acquire land by eminent domain for training the firemen. The amount of land authorized by the order is reasonably necessary for that purpose.

At the trial, it was contended, and an effort was made to show, that the real purpose of acquiring the extra amount of property was to provide a community playground rather than a place to train firemen. There was some evidence to the effect that, at one time prior to this proceeding, a part of relators' land was sought for use in connection with a community building located on adjacent property. The record, however, fails to show that this was the purpose of the condemnation. We readily agree that the district could not acquire property by condemnation ostensibly for its legitimate purposes and then put it to a use not contemplated by statute, but there is nothing to indicate such to be the case.

(c) A municipal corporation having the power of eminent domain has the right to determine what property is necessary for the public use to be made of it, and the action of its proper authorities in this respect is conclusive unless it is shown that such authorities were guilty of fraud or acted arbitrarily and capriciously to such an extent as to amount to a constructive fraud, or, as is sometimes said, there was bad faith, oppression, or abuse of power. *State ex rel. Puget Sound & Baker River R. Co. v. Joiner*, 182 Wash. 301, 47 P. (2d) 14; *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 7, 76 P. (2d) 990; *State ex rel. Washington Water Power Co. v. Superior Court*, 8 Wn. (2d) 122, 111 P. (2d) 577; *State ex rel. St. Paul & Tacoma Lbr.*

*Co. v. Dawson,* 25 Wn. (2d) 499, 171 P. (2d) 189; *State ex rel. Northwestern Electric Co. v. Superior Court,* 28 Wn. (2d) 476, 183 P. (2d) 802.

Relators contend that the commissioners acted arbitrarily and capriciously to the extent that their action in selecting this tract should be set aside. The argument is made that, as there is a substantial dwelling house located on the property sought, that there are other tracts of land which are vacant and located very close to that property and which are as convenient and as well adapted to respondent's needs, and which could have been acquired for less money, the failure to acquire one of them makes it clear that the conduct of the commissioners was arbitrary and capricious.

The same question in principle arises in the selection of a route for a right of way. The property owner from whom a right of way is sought may claim that another route through his property or through other property will serve the purposes of the condemnor just as well or even better than the property sought to be taken, and he may present the same reasons and arguments as are made by relators, but we have decided in *State ex rel. St. Paul & Tacoma Lbr. Co. v. Dawson, supra,* that the mere showing that another route is just as feasible will not defeat the proposed route as a proper selection.

Many witnesses were called by relators who testified as to the availability of other property in the vicinity of that of relators which might have been acquired, but the testimony went no further than that such property was vacant, that some of it might be acquired for less money, and in the opinion of the witnesses its location was substantially as convenient as relators' property. There was no showing made of the existence of such conditions with reference to the other sites that this court can properly say that in the selection of the relators' property there was bad faith, oppression or abuse of power, or that the commissioners acted in an arbitrary or capricious manner.

We are of the opinion that the commissioners of the district were authorized by the statutes above cited to acquire

a site for the erection of a fire station of sufficient size to house, care for and maintain its present equipment and that which can be reasonably anticipated will be needed in the future, and sufficient adjacent property to afford means for the training of firemen as contemplated, and that their judgment in the selection of the property set forth in the order of necessity was exercised in such a manner as to make it free from attack by relators.

The order is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.