[No. 2224–2.   Division Two.   June 14, 1977.]

PACIFIC COUNTY, *Respondent*, v. SHERWOOD PACIFIC, INC., ET AL, *Appellants*.

*Arnold B. Robbins, Rodney G. Pierce, Breskin, Rosenblume & Robbins,* and *Gerald Reitsch,* for appellants.

*James B. Finlay,* for respondent.

REED, J.—Sherwood Pacific, Inc. (Sherwood), and its surety, the Fidelity and Casualty Company of New York

(Fidelity), appeal from a judgment in favor of Pacific County, in an action to recover the face amounts of two bonds furnished by Fidelity to secure Sherwood's installation of roads in its Terra Mar development. We resolve all issues in favor of the County and affirm.

In 1967 Sherwood subdivided its property on the Long Beach Peninsula in Pacific County, calling the development Terra Mar. Shortly thereafter, Sherwood applied to Pacific County for approval of plats for divisions 1 through 5. The plats were approved on May 20, 1968. As a condition to final approval of any plat, a Pacific County ordinance dated December 20, 1965, required *either* the prior construction of improvements under county supervision or the furnishing of a performance bond to assure that the improvements would be completed within the time limit specified and up to county specifications. Sherwood elected to post two bonds

> sufficient to pay the construction costs of grading and surfacing to the approved grades and typical section the roadways of said plat and the installation of drainage structures and such other work as is incidental and necessary thereto all in accordance with those Plat Specifications to be placed on file in the County Engineers Office and to the satisfaction of the County Road Engineer; . . .
>
> Upon failure of the Principal to comply with the requirements stated herein within the time authorized, the Obligee shall look to the Surety for Satisfaction *to the extent of this bond.*

(Italics ours.)

In the case of one bond in the amount of $100,000 covering divisions 1 through 4 of the tract, such improvements were to be completed to the satisfaction of the county engineer not later than December 31, 1968. The bond covering division 5 was in the amount of $10,000 and had a completion date of September 12, 1969. The amounts of these bonds were arrived at by negotiation between Pacific County and Sherwood and were not based upon estimates of actual costs of construction.

Sherwood began construction of the roads, but portions of the work were unsatisfactory to the county engineer and had to be redone. Pacific County granted several extensions of time to Sherwood, which in the meantime became insolvent and could not complete the project. In 1971, the County passed new ordinances which imposed more stringent and expensive requirements for the roads, as well as the sewage disposal facilities within the platted area. Sherwood attempted but was unable to obtain refinancing and the roads were never completed. As a result, Pacific County brought suit in 1972 to compel completion of the platted road system or to be awarded the amount of the bonds, which was conceded prior to trial to be far less than the actual costs of completing the improvements in accordance with the original specifications. The court, sitting without a jury, awarded the full $110,000 plus interest from October 20, 1971, the extended date on which Sherwood was to resume road construction. Both Sherwood and Fidelity appeal.

■■ Initially, defendants contend the County lacked legal authority to require the posting of the performance bonds, and that the bonds are therefore unenforceable. The County's 1965 ordinance recited that it was based upon Laws of 1937, ch. 186, as amended and as codified in RCW 58.16 at the time the bonds were executed. Former RCW 58.16.060 provided that a county could approve a plat upon a finding "that the plat, subdivision, or dedication makes appropriate provision for streets and other public ways." Former RCW 58.16.110 gave the county authority to establish reasonable regulations with respect to arrangement and improvement of streets:

> To effectuate the policy of this legislation, *every legislative or planning authority* charged with the duty of passing upon and giving or withholding approval of plats, subdivisions and dedications *shall establish reasonable regulations,* with the continuing right of amendment thereof, *controlling* the form of plats, subdivisions and dedications to be filed, *the minimum width of streets and alleys,* the minimum lot or tract area, *street*

*arrangement, provision for improvement of streets and public places* and for water supply, sewerage and other public services, dedications of parks, playgrounds and other public places.

(Italics ours.) Defendants argue the County had no authority to require such performance bonds until the legislature subsequently chose to bestow that power when it enacted RCW 58.17.130, effective July 16, 1969.[1] We would first note that "the passage of a statute expressly conferring power on a political subdivision does not necessarily preclude the pre–existence of the power." *Gordon v. Board of Supervisors*, 207 Va. 827, 831, 153 S.E.2d 270 (1967). For example, it is difficult for us to conceive that the County had no authority to require that certain structures be designed and certified by or under the supervision of a registered civil engineer prior to enactment of RCW 58.17.130.

Municipal corporations cannot exercise powers except those expressly granted or necessarily implied therefrom, *Pacific First Fed. Sav. & Loan Ass'n v. Pierce County*, 27 Wn.2d 347, 178 P.2d 351 (1947). A statute expressly granting general authority to achieve a lawful objective includes by implication the right to do such acts as may be reasonably necessary to achieve that objective. *State v. Melton*, 41

---

[1]RCW 58.17.130 provides as follows:

"Bond in lieu of actual construction of improvements prior to approval of final plat—Bond or security to assure successful operation of improvements. Local *regulations shall provide that in lieu of the completion of the actual construction of any required improvements* prior to the approval of a final plat, the city, town, or *county legislative body may accept a bond*, in an amount and with surety and conditions satisfactory to it, or other secure method, providing for and securing to the municipality the actual construction and installation of such improvements within a period specified by the city, town, or county legislative body and expressed in the bonds. In addition, local regulations may provide for methods of security, including the posting of a bond securing to the municipality the successful operation of improvements for an appropriate period of time up to two years after final approval. The municipality is hereby granted the power to enforce bonds authorized under this section by all appropriate legal and equitable remedies. *Such local regulations may provide that the improvements such as structures, sewers, and water systems shall be designed and certified by or under the supervision of a registered civil engineer prior to the acceptance of such improvements.*" (Italics ours.)

Wn.2d 298, 248 P.2d 892 (1952); *State ex rel. Hunter v. Superior Court,* 34 Wn.2d 214, 208 P.2d 866 (1949); *State ex rel. Becker v. Wiley,* 16 Wn.2d 340, 133 P.2d 507 (1943); 56 Am. Jur. 2d §§ 195, 226 (1971); 2A C. Sands, *Statutes and Statutory Construction* § 55.04 (4th ed. 1973). Legislation authorizing municipalities to make nondiscriminatory regulations for the public health and welfare is usually given a liberal interpretation. 3 C. Sands, *Statutes and Statutory Construction* § 64.02 (3d rev. ed. 1974). And if a power is granted to a municipality by statute and the law is silent as to the mode of exercising such power, the municipal corporation has reasonable discretion to determine how to exercise the power. 2 E. McQuillin, *Municipal Corporations* § 10.29 (3d rev. ed. F. Ellard 1966).

In the instant case, former RCW 58.16.110 conferred upon counties a general grant of authority to establish "reasonable regulations" governing the form of plats and subdivisions and the width, arrangement and improvement of streets which were to be appropriately provided for if the plat or subdivision was to be approved pursuant to former RCW 58.16.060. Inherent in this general grant of power is the implied authority to adopt such means as are reasonable to insure that a developer will deliver on its promise to install proper streets. An approving body's authority should be flexible, and it should not always be required to withhold plat approval until the improvements are actually constructed. We hold it was not only reasonable for Pacific County to accept a performance bond to effectuate its statutory authority to provide for street improvements incidental to final approval of Sherwood's plat, but that the authority to negotiate and accept a performance bond was necessarily implied from the powers expressly granted to the County. *Genesee County Bd. of Road Comm'rs v. North American Dev. Co.,* 369 Mich. 229, 119 N.W.2d 593 (1963); *Bellefontaine Neighbors v. J.J. Kelley Realty & Bldg. Co.,* 460 S.W.2d 298 (Mo. Ct. App. 1970).

Defendants next argue that, although the improvements within the plat were dedicated to and officially approved by

the County, the County never acquired a legal interest in the streets or any legal obligation with respect to the construction and maintenance, and therefore cannot enforce the bonds. We do not agree. The authorities are divided on whether the approval of a plat, without more, constitutes acceptance of a dedication and vests certain rights in the public.[2] 11 E. McQuillin, *Municipal Corporations* § 33.24 (3d rev. ed. F. Ellard 1964). The reluctance to find acceptance of a dedication without affirmative action by the public authority is explained by the belief that property owners should not be allowed to impose a street upon a municipality against its will and thus compel it to make improvements. *See, e.g., Mathis v. Thunderbird Village, Inc.,* 236 Ore. 425, 389 P.2d 343 (1964); *cf. Bellefontaine Neighbors v. J.J. Kelley Realty & Bldg. Co., supra.* It is also the prevailing view that even after acceptance, the time when and extent to which streets are opened and improved, is within the discretion of the municipal authorities. 11 E. McQuillin, *Municipal Corporations* § 30.31; 1A C. Antieu, *Municipal Corporation Law* § 918 (Supp. 1976).

In the instant case, however, the actions of Pacific County went far beyond an acceptance of mere "paper streets," *cf. Basil v. Pope,* 165 Wash. 212, 5 P.2d 329 (1931), such as would be contained upon the face of the ordinary plat. Here, the county commissioners approved the plat in all its aspects and accepted the dedication of the improvements depicted thereon, *upon the condition* that the streets be completed to their specifications and satisfaction. *In lieu of* such completion, they accepted performance bonds, thus evincing their intent to assume dominion and control over such streets and thus the duty to maintain them when completed. In effect, the County was accepting a dedication of *completed streets;* the bonds

---

[2]RCW 58.17.020(3), effective July 16, 1969, specifically provides in part: "The intention to dedicate shall be evidenced by the owner by the presentment for filing of a final plat or short plat showing the dedication thereon; and, the *acceptance by the public shall be evidenced by the approval of such plat* for filing by the appropriate governmental unit." (Italics ours.)

were the County's guaranty. The bonds not only satisfied Sherwood's obligation under the ordinance to complete the roads to County specifications as a condition of final plat approval, but Sherwood was entitled to represent to prospective buyers of the lots that it had posted the required bonds to secure completion of the roads.

■ As obligee on the bonds, the County's legal interest—quite apart from the contractual terms of the bond itself—was that of a trustee who was required, should the developer fail to make the secured improvements, to attempt to recover the funds from the bonding company and use them ultimately to complete improvements. *University City v. Frank Miceli & Sons Realty & Bldg. Co.,* 347 S.W.2d 131 (Mo. 1961); *Oakland v. De Guarda,* 95 Cal. App. 270, 272 P. 779 (1928); E. Yokley, *Law of Subdivisions* § 59, at 150 (1963). It is the same as if the bond verbiage read "if the improvements are not completed as proposed within the time limits, the bond shall be forfeited and the money shall be collected by the county and used to complete the specified improvements." *Cf. Medina v. Holdridge,* 46 Ohio App. 2d 152, 346 N.E.2d 339 (1970); *M. Zerman Realty & Bldg. Corp. v. Westwood,* 64 N.J. 590, 319 A.2d 441 (1974); *see also Evola v. Wendt Constr. Co.,* 170 Cal. App. 2d 21, 338 P.2d 498 (1959); *Berry v. Drumright,* 110 Okla. 223, 237 P. 102, 103 (1925); E. Yokley, *Law of Subdivisions* § 61, at 152. The true beneficiaries of the duty to collect upon the bonds and complete the improvements are the members of the public in general and directly affected property owners who have purchased in reliance upon the approved plat and who have a distinct interest in the construction of serviceable roads. RCW 58.16.060; *Genesee County Bd. of Road Comm'rs v. North American Dev. Co., supra.*

Nor do we think it fatal to the County's position that it may not yet have completed the improvements or that no property owners have commenced proceedings to force it to do so. The duty is there and performance is presumed. As stated in *Oakland v. De Guarda, supra* at 286:

But it is the contention of the respondent "that the obvious result achieved in the event the city is allowed to recover in the capacity of trustee would be that any sum recovered would go in the general fund; lose its identity and the real parties damaged would not be benefited thereby." But this unfortunate conclusion can be based only upon the assumption that the City of Oakland, through its proper officers, would attempt to hold for its own use and benefit money which it had received for the use and benefit of "the real parties damaged," who were rightly and justly entitled to the money. *The defendant Surety Company cannot be permitted to urge in its own defense any such assumed wrongful conduct on the part of the City of Oakland.*

(Italics ours.) For a similar holding *see Sioux City v. Western Asphalt Paving Corp.,* 223 Iowa 279, 271 N.W. 624 (1937), where the court held the true beneficiaries of a city's recovery against a defaulting street contractor's surety were the abutting owners who had been specially assessed for the cost of the improvement.

■ We disagree also with the defendants' contention the bonds are unenforceable as in the nature of a penalty. These bonds were not intended as punishment for nonperformance; rather, they were intended to be "in an amount sufficient to pay construction costs of grading and surfacing" and upon failure of timely completion by Sherwood, the bonds provided funds "to the extent of the bond" to cover as much of the costs of completion as then remained. By the terms of the bonds the County could not have collected the full amount if a lesser sum had been required to complete the job. Although the bond amounts are argued not to have borne any relationship to construction costs at the outset, there is no claim they ever exceeded that cost and this should not defeat Pacific County's right to recover. *Genesee County Bd. of Road Comm'rs v. North American Dev. Co., supra.*

■ Defendants next argue that they are exonerated by the additional road construction specifications and sewage treatment requirements imposed by the County in 1971,

which allegedly rendered Sherwood's performance financially impossible. Defendants further argue performance was made impossible because of the subsequent adoption of the Washington Shoreline Management Act of 1971 (RCW 90.58.010 *et seq.*) and the Federal Environmental Protection Act. A party to a contract cannot avail himself of non-performance where the nonperformance is caused by his acts. *Wolk v. Bonthius,* 13 Wn.2d 217, 124 P.2d 553 (1942). The doctrine of impossibility of performance might be pertinent in the instant case had the events relied on occurred during the pendency of the original obligation to make the improvement. The only reason defendants became subject to the ordinances and other legislation is that they failed to complete performance by the original deadlines in December 1968 and September 1969.[3] As will be discussed more fully, it was not the fault of the County that the improvements were not completed on time, which would have been prior to the legislative developments cited.

Sherwood and Fidelity also contend that Sherwood's contractual obligation was altered partly by the county engineer's change in specifications during the early stages of road construction, and partly by the extensions of time granted Sherwood. Sherwood's argument is not that the County lacked authority to specify the more stringent requirements, but simply that they made the project prohibitively expensive, rendering performance impossible and discharging the promised duty. The answer to this is found in the fact that Sherwood's failure to perform was not caused by any improper act of the County, but by its engineer's decision that the roads as first laid out and graded would not drain properly in places because the undersurface contained clays and stumps. The requirement that certain segments be filled with sand and regraded was pursuant to the County's duty to accept only roads of adequate

---

[3]The Shoreline Management Act of 1971, RCW 90.58.140(1), does not require a permit for a development if a final plat was approved between April 1961 and April 1971. As Sherwood's plat was approved in 1968, it is not subject to the act.

quality, a duty of which Sherwood was aware. The bonds themselves secured construction of roads in accordance with the plat specifications *and* "to the satisfaction of the County Road Engineer." The changes ordered by the County were intended to achieve a type and quality of construction which the 1965 ordinance could reasonably be interpreted to require, and which were therefore not material changes in the way the roads should have been built in the first place. The fact that Sherwood became insolvent due to the expense of reconstruction and other, unrelated factors, does not discharge its duty to perform. 6 A. Corbin, *Corbin on Contracts* § 1332 (1962).

Fidelity contends that it was discharged because it did not consent to the County's change in construction specifications and the extensions of time for completion granted *to* Sherwood. We have previously answered the argument with respect to the alleged alteration in the manner of Sherwood's performance. The engineer's directive for filling and regrading was not a material change in the 1965 specifications. The later changes contained in the 1971 ordinance became applicable only because Sherwood failed to perform in a timely manner—the very occurrence for which Fidelity provided its bonds. Moreover, although extension of the time for performance without the surety's consent is usually grounds for discharge, A. Stearns, *Law of Suretyship* § 6.16 (5th ed. J. Elder 1951), a surety may remain liable on his obligation by waiving his right to discharge. Here the bonds themselves contain at least two provisions by which we think Fidelity waived any right to insist that it expressly consent to time extensions. First, the bonds specified certain completion dates, unless the dates "be extended at the option of the County Road Engineer." Second, the surety expressly waived all rights to claim a discharge from its obligation except as stated in the bonds, *i.e.,* upon satisfaction of the construction requirements.

Finally, defendants complain about the trial court's allowance of prejudgment interest from October 1971. Because the cost of completing the roads in accordance

with the original specifications far exceeded the face amount of the bonds, the amount due thereon to Pacific County by reason of Sherwood's default was liquidated and the allowance of interest was appropriate. *Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 273 P.2d 652 (1954).

The judgment is affirmed with any and all sums collected by Pacific County upon its judgment, including interest and future interest, to be retained in trust, separate and apart from its general funds, and to be devoted exclusively to completion of the improvements described in and secured by Fidelity and Casualty bonds.

PETRIE, C.J., and RINGOLD, J. Pro Tem., concur.

Petition for rehearing denied July 14, 1977.

Review denied by Supreme Court January 20, 1978.