[No. 13556.   Department Two.   July 29, 1916.]

The State of Washington, *on the Relation of DeWitt M.*
*Evans, Plaintiff*, v. The Superior Court for Pierce
County *et al., Respondents.*[1]

Justices of the Peace—Police Justice—Term of Office — Appointment—Revocation—Statutes.   Under Rem. & Bal. Code, § 7520, providing that, within ten days after each general election, the mayor of cities of the first class shall appoint one of the justices of the peace so elected the police justice of such city, the term of the appointment is coextensive with the term for which he was elected as justice, and the mayor has no power to remove him or revoke the appointment, in the absence of statutory authority; especially in view of the provisions of the constitution, art. 5, § 3, providing that officers recognized by the constitution shall be subject to removal only for misconduct or malfeasance in the manner provided by law, and the provision that judicial officers may be impeached; there being no implied power of removal by the mayor resting in public policy.

Certiorari to review a judgment of the superior court for Pierce county, Jurey, J., entered June 10, 1916, in prohibition proceedings, denying the relator's right to the office of police justice.   Reversed.

*Hayden, Langhorne & Metzger,* for relator.

*U. E. Harmon* and *Frank M. Carnahan,* for respondents.

Chadwick, J.—The relator and two others were duly elected as justices of the peace in the city of Tacoma at the last general election.   It is provided:

"Within ten days after such election [each general] the mayor of the city shall appoint one of the justices [of the peace] so elected the police justice or police judge of such city [cities of the first class], who shall before entering upon the duties of his office as police judge, give such additional bond for the faithful performance of his duties as the city council may by ordinance direct."   Laws 1899, p. 135; Rem. & Bal. Code, § 7520.

[1] Reported in 159 Pac. 84.

In 1903 this act was so amended as to give such justice exclusive jurisdiction over all offenses defined by ordinance, and other powers which need not be enumerated.

Within ten days after the election, the respondent A. V. Fawcett, then and now, the mayor of the city of Tacoma, appointed the relator as police justice, or police judge. He qualified and has, ever since, exercised the powers and duties of the office. On May 15th, 1916, respondent Fawcett, acting as mayor, notified relator that his appointment as police justice was revoked. Relator instituted this proceeding to test the right of the respondent Fawcett to revoke his appointment. The respondent court held that relator had not been appointed for any fixed or definite term, and that the mayor had power to remove him at will without a hearing and without assigning any cause therefor. It is stipulated that police justices have, since the act of 1899 (Laws 1899, p. 135) held their offices for the same time and term as they held the office of justice of the peace.

With the holding that the police justice does not hold his office for any definite term, we cannot agree. The statute does not limit his term, in terms, or make it subject to the arbitrary will of the appointing power. On the contrary, by the strongest implications, it fixes the term as coextensive in time with that of the term of the justice of the peace upon which the office of police justice is made to rest, and without which, one assuming to act as police justice would have no jurisdiction whatever.

Section 1 of the act of 1899, p. 135 (Rem. & Bal. Code, § 6533) provides that justices of the peace shall be elected by the qualified electors in cities of the first class "at each general election." The meaning of this is that one who had been elected justice of the peace, and has been appointed and has qualified as police justice, holds for a term. Our conclusion is strengthened by the provision of the law that the mayor shall select one of the justices to hear city cases within ten days after the general election. Thus indicating that it was the

intention of the legislature that the term of the one should begin with the other. If it does so begin, it cannot be denied that it would end at the same time. Rem. & Bal. Code, § 3860, is not without bearing. It expresses a legislative intention to define terms of office.

That an officer holding for a term is not subject to removal by the arbitrary will of the executive, although an appointee, is now well settled by authority. Indeed the power to remove is determined, in the absence of statutes, almost entirely by reference to the fixity of the term. Without the citation of other authority, this proposition may be rested upon *State ex rel. McReavy v. Burke,* 8 Wash. 412, 36 Pac. 281, where it is said that the rule, as stated, is sustained by the great weight of authority. The court then proceeds to inquire whether that case fell within the rule. It was held that it did not, inasmuch as the legislature had given the governor the power of removal by positive statute, which, in effect, made the appointee's official life subject to the will of the governor and the acceptance of the office subject to the condition of summary removal. In the absence of legislation—granting, but not deciding, that the legislature could provide for the summary removal of an officer exercising judicial functions—the power of removal, if any, is to be found in the constitution. A justice of the peace is not subject to impeachment and is removable only for misconduct or malfeasance in such manner as may be provided by law. Const., art. 5, §§ 2, 3. We find no provision of law giving the mayor of a city of the first class the power to remove a police justice. But the fundamental error in the position assumed by respondents is that they seem to conceive that the office of justice of the peace, and police justice are two offices, the one held at the suffrage of the people, the other at the will of the appointing power.

There is but one office, that of justice of the peace. That he exercises jurisdiction over violations of city ordinances in no way changes his official character or his office. The

framers of the constitution, foreseeing that the time would come in all cities when the convenience of the public would demand that the jurisdiction then exercised by all justices of the peace in corporate limits should be exercised by one or more of them, declared (art. 4, § 10) that the legislature should provide for the number of justices of the peace to be elected in incorporated cities and towns, and prescribe by law their powers, duties and jurisdiction, and further, that "justices of the peace may be made police justices of incorporated cities and towns." No new office was created. The justice who is selected as police justice is exercising the same jurisdiction that he would have exercised if none of the justices had been selected as police justice; the only difference being that the legislature has provided a way in which the jurisdiction theretofore extending to all of the justices, shall, in so far as it relates to city ordinances, licenses, etc., be exclusively exercised by one of them. Necessarily some method of selection confronted the legislature. It passed the act of 1899, saying that the mayor should appoint a police justice, from among the whole number having jurisdiction of the subject-matters to be considered, who should thereafter be privileged to exercise such jurisdiction exclusively.

The justice takes his office and its powers and duties from the constitution and the legislature. The office and its powers cannot be taken away by any authority that does not have the sanction of the legislature. It must be "provided by law." The justice of the peace who is selected to act as police justice is entirely independent of the mayor when once selected. The mayor did not give relator his office, nor did he define his jurisdiction. He cannot take the one away or limit the other. The method of selection adopted by the legislature was one of convenience. It might have said, the several justices of the peace should draw lots, or that the one receiving the highest number of votes should be police justice. If such were the case, who would contend that the mayor could remove the justice at will? The case is not, therefore,

to be measured by the manner of selection, but by the character of the office as defined in the constitution, its tenure, and its attendant duties and jurisdictions as defined by law.

It is only necessary to notice the cases of *Easson v. Seattle,* 32 Wash. 405, 73 Pac. 496; *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847, and *Shurtleff v. United States,* 189 U. S. 311, upon which the respondents rely. In the *Easson* case, the appointee held a position defined by charter (art. 24, § 8), providing:

"Unless otherwise provided by law or this charter, each officer, board or department authorized to appoint any deputy, clerk, assistant, or employee, shall have the right to remove any person so appointed."

The opinion is an able one, but in result goes no further than to hold that the civil service commission did not have power to remove the appointee and, not having been removed by the appointing officer, he should be reinstated.

Price was a teamster, an employee in the classified civil service of the city of Seattle. He held his position without term "until removed or retired." His case clearly fell within the rule of implied, if not express, power of removal.

The *Shurtleff* case declares no more than the general rule that the power to appoint implies a power to remove.

But the real answer to all these cases is to be found in the constitution, art. 5, § 3, which logically declares that all incumbents of offices created or recognized by that instrument, shall be subject to removal only in such manner as is provided by law. This section negatives the thought that officers holding any office recognized or created by the constitution are to be subject to the rule of the cases relied on, or that they can be removed without, or in the absence of, a statute authorizing their removal. This is especially so with reference to judicial officers. It would violate the very principle upon which the judicial function is made to rest, that of absolute freedom from fear or favor of the appointing power. It

would not be so if a judicial officer were to be made the subject of the whim or caprice of the appointing power.

The constitution provides that judicial officers may be impeached. If the rule that the power to remove is implied in the power to appoint is as broad in its application as counsel would have it, a superior judge, when once appointed by the governor, would hold his office at the will of the governor and might be removed summarily, for surely there is the power to appoint. There, the constitution says that such removal shall be [only] by impeachment; and here, that it shall be [only] "for misconduct or malfeasance in office in such manner as may be provided by law," clearly implying, in either case, a charge, a hearing, and a finding.

Respondents contend further, inasmuch as respondent Fawcett is the executive officer of the city, charged with the duty of enforcing the ordinances of the city and with general supervision over its affairs, with power to take all proper measures for the preservation of public order, etc., that he has more than an implied power of removal; that his power rests in public policy.

Having held that relator is not the official creature of the respondent mayor, but that he holds his office in virtue of the constitution and the general laws, the argument may be passed as without merit.

Reversed and remanded, with direction to issue the writ.

MAIN, MOUNT, and HOLCOMB, JJ., concur.