[No. 45291.   En Banc.   October 19, 1978.]

THE CITY OF SPOKANE, *Appellant*, v. J–R DISTRIBUTORS, INC., *Respondent*.

*Richard F. Wrenn, Corporation Counsel, John J. Madden, Acting Corporation Counsel,* and *Greg Smith* and *Emmett J. Shearer, Assistants,* for appellant.

*Victor V. Hoff,* for respondent.

*Donald C. Brockett, Prosecuting Attorney for Spokane County,* on behalf of Washington Association of Prosecuting Attorneys, *Slade Gorton, Attorney General,* and *Thomas F. Carr, Assistant,* amici curiae.

HICKS, J.—The City of Spokane appeals from an order dismissing its action under ordinance No. C–23398 to abate

a "moral nuisance" at respondent's adult bookstores. We accepted direct review and we affirm.

In August 1976, Spokane enacted ordinance No. C–23398, which declares lewd or obscene publications and films and the places where they are sold or exhibited to be "moral nuisances". The ordinance provides specific and detailed procedures for the abatement of such nuisances in a "record court of competent jurisdiction". Because a municipal court is not a court of record under Const. art. 4, § 11, the abatement procedure fashioned by the ordinance must be commenced and carried out in the superior court.

Sections 5 and 6 of the ordinance authorize the corporation counsel or any citizen of the City to bring an action to abate the declared nuisance. Section 7 provides for the issuance of an ex parte restraining order prohibiting the removal of the personal property and contents of the place where a nuisance is alleged to exist until a hearing can be held on an application for a temporary injunction. That provision also specifies the manner of serving the order and makes violation of the order a contempt of court.

Procedures for the issuance of a temporary injunction after notice and hearing are established in sections 8 and 9. Those sections dictate that, if the allegations of the complaint are sustained, the judge "shall": (1) temporarily enjoin the maintenance of the nuisance; (2) declare a temporary forfeiture of certain real and personal property used in connection with the nuisance; and (3) order closure of the premises where the nuisance is maintained.

Section 11 requires that the nuisance action have precedence over all but a few specified type of cases and with the concurrence of the court be set for trial at the first term of the court, whatever that may mean. Sections 12 and 13 establish rules of evidence and specify that certain prior convictions and evidence of general reputation of the building or place are admissible to prove particular elements of the nuisance action.

Sections 15, 16 and 18 provide remedies for the action, including removal and sale of property used in conducting

the nuisance, destruction of lewd matter, assessment of a $300 civil penalty, continuation of the closing order for 1 year, punishment by contempt proceedings for violation of the injunction, forfeiture to the City of the furniture, fixtures and contents of the place which is a nuisance, and forfeiture of money received for the sale or exhibition of a film or publication found to be a nuisance. Under section 17, use of a place as a moral nuisance by a tenant authorizes the owner to void the lease and "causes the right of possession to revert and vest in such owner, who may without process of law make immediate entry upon the premises."

In November 1976, at least one Spokane police officer visited respondent's adult bookstores, purchased magazines and films, and viewed other films on a coin–operated machine. The City then commenced this action, based on ordinance No. C–23398, to abate each of those particular items as a moral nuisance.

Respondent moved to dismiss the claim for failure to state a claim and for lack of subject matter jurisdiction. The trial court dismissed the complaint, holding that: (1) the City had no authority to prescribe rules of evidence and procedures for the superior court and to confer jurisdiction upon that court to enforce city ordinances; (2) respondent had standing to challenge the constitutionality of the ordinance; (3) the padlocking and property abatement procedures and other remedies constituted an unconstitutional prior restraint on speech; (4) the entire ordinance was unconstitutional because the invalid sections were not severable; and (5) particular provisions of the ordinance were invalid because they conflicted with state law.

We agree that the enactment of this ordinance was beyond the scope of authority delegated to the City. Since the ordinance is invalid for that reason, we do not discuss the other infirmities found by the trial court and argued by respondent.

Initially, we note that Spokane did not bring an action in the superior court to abate the claimed nuisance under RCW 7.48, RCW 7.40, or some other state statute. Rather, it sought to abate the "moral nuisance" under a city ordinance which purports to establish specific procedures, rules of evidence and remedies to be applied in the superior court. It claims that the specific procedures established in the ordinance were necessary to avoid imposing an unconstitutional prior restraint on speech. *See Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973).

█ Municipal corporations are creatures of the state and derive all of their authority and powers from the state constitution and the legislature. *Lauterbach v. Centralia,* 49 Wn.2d 550, 304 P.2d 656 (1956); *Campbell v. Saunders,* 86 Wn.2d 572, 546 P.2d 922 (1976). As this court stated in *Lauterbach,* at page 554:

> A municipal corporation is a body politic established by law as an agency of the state—partly to assist in the civil government of the country, but chiefly to regulate and administer the local and internal affairs of the incorporated city, town, or district. *Columbia Irr. Dist. v. Benton County,* 149 Wash. 234, 235, 270 Pac. 813 (1928). It has neither existence nor power apart from its creator, the legislature, except such rights as may be granted to municipal corporations by the state constitution.

The question present in each case is whether a city has been vested by the state constitution or by an act of the legislature with the authority to enact the ordinance in question. The authority must be found either in an express grant or by necessary implication from such a grant. *Pacific First Fed. Sav. & Loan Ass'n v. Pierce County,* 27 Wn.2d 347, 178 P.2d 351 (1947); *Pacific County v. Sherwood Pac., Inc.,* 17 Wn. App. 790, 567 P.2d 642 (1977).

Spokane contends that ordinance No. C–23398 is within the power to enact police and other regulations conferred by Const. art. 11, § 11. It also relies on RCW 35.22.280(30), which provides that first–class cities have the power to "declare what shall be a nuisance, and to abate the same". We do not agree that either of these provisions delegates

authority to a city to specify procedures, rules and remedies to be applied in the superior court.

█ It is true that within its sphere, a city's power to enact police power regulations is extensive. *See, e.g., Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969). Nonetheless, it is generally agreed that the power does not extend to matters of judicial practice and procedure. 6 E. McQuillin, *The Law of Municipal Corporations,* §§ 22.15, 24.46 (3d rev. ed. 1969); 1 C. Antieau, *Municipal Corporation Law* § 3.35 (1978); 3 C. Antieau, *Municipal Corporation Law* § 26.10 (1978); 62 C.J.S. *Municipal Corporations* § 288 (1949); and cases cited.

There are several reasons for this limitation. First, the administration of justice and the operation of the courts is a matter of state rather than local concern. Antieau, *supra,* and cases cited; *Hardamon v. Municipal Court,* 178 Colo. 271, 497 P.2d 1000 (1972); *and see Massie v. Brown,* 84 Wn.2d 490, 527 P.2d 476 (1974); *State ex rel. Evans v. Superior Court,* 92 Wash. 375, 159 P. 84 (1916); *In re Cloherty,* 2 Wash. 137, 27 P. 1064 (1891). It is, of course, true that a municipality's police powers extend only to those matters which are of local concern. *Petstel, Inc. v. County of King, supra; Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964); McQuillin, *supra* at § 24.33.

This particular limitation on the police power is also dictated by the doctrine of separation of powers. The power to regulate the practice and procedure of the superior courts is one which is inherently judicial. Const. art. 4, § 1; *State ex rel. Foster–Wyman Lumber Co. v. Superior Court,* 148 Wash. 1, 267 P. 770 (1928); *State v. Fields,* 85 Wn.2d 126, 530 P.2d 284 (1975); *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974). That judicial power may not be abrogated or restricted by any legislative act. *State v. Smith, supra; Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P.2d 397 (1936). While as a matter of comity we have recognized some reasonable state legislation regarding judicial procedure (*Blanchard v. Golden Age Brewing Co., supra*), the need for uniformity, discussed below, provides ample

reason why municipal ordinances with similar effect should not be so recognized.

Finally, common sense and logic instruct that the power to guide the operations of the superior court is not among those delegated to municipalities. Superior court rules must be uniform in order that judicial business can be conveniently and expeditiously transacted. *See* Const. art. 4, § 6 (amendment 28) and art. 4, § 24; RCW 2.08.230 and 2.16-.040; *State ex rel. Foster–Wyman Lumber Co. v. Superior Court, supra.*

That uniformity, so essential to the efficient operation of the judicial system, could not be achieved if each municipality were free to prescribe rules of practice and procedure for the superior court of its county. If such a circumstance prevailed, procedures would vary, not only among the superior courts, but also within a single superior court when considering cases arising in different municipalities.

> [I]f one city which has 20,000 inhabitants can create a tribunal and enact modes and methods for the trial of contested election cases, the other cities of the same class in the state must be conceded the same powers, and the result would be, even conceding that the power was conferred in all cases upon the superior judge, that a mode or method prescribed by one city would be different from the mode and method prescribed by the other cities, and there would be presented the unheard–of spectacle of one officer having his case tried under different form, modes, methods, and practice from those applied to another officer in the same kind of a case in another part of the state.

*State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 608–09, 45 P. 23 (1896).

We have previously rejected the idea that a municipality could confer jurisdiction upon the superior courts and prescribe the manner in which they operate. In *Fawcett,* we considered a municipality's authority to provide for an action in the superior court to contest the election of a city officer. After determining that neither the constitution nor

state statutes gave the superior court jurisdiction over such an action, we went on to state:

> The authority conferred upon superior courts, who are state officers, even conceding that the state could create a tribunal clothed with the power claimed for the court in this case, must be created by a higher authority than the local legislature of the city. The jurisdiction and duties of the superior court, and the methods prescribed by which the court shall exercise its jurisdiction, must be conferred by the constitution and by legislative authority; and this was the view this court took in *Howe v. Barto,* 12 Wash. 627, (41 Pac. 908) [1895], where, in discussing that case, the court said:
> "It is claimed by the respondents that these sections prescribed a rule of evidence for state courts, and that to do so was not within the power of the city in adopting its charter, under the constitution and laws of the state. If the effect of such sections was to prescribe the manner in which a state court should transact its business, the claim of respondents would have to be sustained."

*State ex rel. Fawcett v. Superior Court, supra* at 608.

The superior court does have jurisdiction in "all cases in equity" and of "actions to prevent or abate a nuisance." Const. art. 4, § 6 (amendment 28). Moreover, the superior court has the power to issue injunctions (RCW 7.40.010) and has jurisdiction to enjoin the sale or distribution of obscene materials (RCW 7.42.010). Since the court has jurisdiction and authority under these provisions, the City contends that this case is distinguishable from *Fawcett,* and that the rule stated therein does not apply. The City did not, however, bring this action under one or more of these provisions. Rather, it premised its action on ordinance No. C–23398 which mandates the superior court to follow specific rules and procedures and to abate the nuisance in a prescribed fashion. This the City may not do. As we indicated in *Fawcett,* such direction must come from a legislative source higher than a municipality.

We also do not agree with the City that RCW 35.22-.280(30) delegates the claimed authority. That statute provides that first–class cities have the power to "declare what

shall be a nuisance, and to abate the same". The authority conferred by this provision is merely that of defining nuisances and abating the same without resort to the courts. *Everett v. Unsworth*, 54 Wn.2d 760, 344 P.2d 728 (1959). The power to exercise control over the operations of the superior court is certainly not expressly delegated by this provision; nor is that power one which is necessarily implied by this grant or even suggested by it.

Since the relevant authority has not been delegated to Spokane by Const. art. 11, § 11, or by RCW 35.22.280(30), those provisions of ordinance No. C–23398 which purport to direct the operation, practice and procedure of the superior court are beyond the City's power and are invalid.

■ In addition to this infirmity, certain provisions of ordinance No. C–23398 are invalid because they are in conflict with state statutes. Under the police power delegated by Const. art. 11, § 11, a city has no authority to enact regulations which "conflict with general laws." *Seattle v. Wright*, 72 Wn.2d 556, 433 P.2d 906 (1967); *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964). A municipal regulation must yield to a state statute on the same subject if the two cannot be harmonized. *Seattle v. Wright, supra.*

RCW 7.42 deals generally with the enjoining of obscene "prints and articles". RCW 7.42.030 provides: "No injunction or restraining order shall be issued prior to the conclusion of the trial." That section cannot be harmonized with sections 7, 8, and 9 of the ordinance which provide for the issuance of an ex parte restraining order and a temporary injunction prior to trial on the merits.

The ordinance also conflicts with RCW 7.40.020, which specifies four particular grounds for the issuance of restraining orders or injunctions. That provision cannot be harmonized with section 7, which provides for a restraining order to be issued for "good cause", and section 9, which states that a temporary injunction shall issue if "the allegations of the complaint are sustained to the satisfaction of the court."

A further conflict exists between section 7 and CR 65. CR

65 is a detailed rule governing the issuance of injunctions and temporary restraining orders. That rule authorizes the issuance of a temporary restraining order without notice to an adverse party only where (1) the applicant/attorney certifies to the court in writing the efforts, if any, which have been made to give such notice and the reasons supporting his claim that no notice should be required; and (2) it clearly appears from specific facts that immediate and irreparable injury will result to the applicant before the adverse party can be heard. These specific and detailed requirements are completely inconsistent with section 7, which makes no provision for notice and which requires only a showing of "good cause". Since these provisions conflict with the general laws of the state, they are beyond the scope of the City's power and are invalid for that reason.

We must reject the idea that *Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973), somehow adds to the power of the City. The fact that a particular procedure is necessary to avoid imposing an unconstitutional prior restraint, does not in itself mean the City has the power to provide such procedure. As we have indicated, the City has only those powers which have been specifically delegated. *Campbell v. Saunders,* 86 Wn.2d 572, 546 P.2d 922 (1976). The constitutional requirements discussed in *Bittner* do not grant new authority to a governmental body, but merely limit the manner in which existing power may be exercised. Since Spokane has not been delegated the power necessary to constitutionally regulate this matter, it simply must approach the problem it perceives in some other manner.

■ Having stated that substantial portions of the ordinance were manifestly beyond the authority delegated to the City, we conclude that it. is invalid in its entirety. Where a portion of a statute is held invalid, the entire statute may fall if the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purpose. *State ex rel. Distilled Spirits Inst.,*

*Inc. v. Kinnear,* 80 Wn.2d 175, 492 P.2d 1012 (1972). We find this to be the case with ordinance No. C–23398. Such provisions as might be within the City's power to enact, would be completely incapable of accomplishing the injunction and abatement of the defined nuisances. Since the application of those remedies was clearly the City's purpose in enacting the ordinance, it is invalid in its entirety under the rule discussed in *Kinnear.*

Further, the City concedes that the specific procedures provided by the ordinance are necessary to avoid imposing a prior restraint. Since the establishment of procedures for the superior court is beyond the power of the City, the elimination of the invalid portions of the ordinance prevents the City from using the remaining sections to achieve its purpose in a constitutionally permissible manner. *Seattle v. Bittner, supra.*

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.