[No. 8542-5-I. Division One. January 12, 1981.]

THE MUNICIPAL COURT OF SEATTLE, *on the Relation of Judd E. Tuberg, Appellant,* v. WILLIAM PAUL BEIGHLE, *Respondent.*

*Eugene D. Seligmann,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Susan Sampson, Assistant,* for respondent.

JAMES, C.J.—Judd E. Tuberg appeals from the dismissal of his information in the nature of quo warranto, pursuant to RCW 7.56, challenging his summary removal from the office of magistrate of the Municipal Court of Seattle.

Tuberg was appointed magistrate and began service May 12, 1975. The following facts have been stipulated to by the parties:

C. The position of magistrate in the Seattle Municipal Court is a judicial office. . . .

. . .

J. On August 1, 1977, [Tuberg] was terminated as magistrate for the Seattle Municipal Court. This termination was not preceded by a specified charge, a notice of hearing, a hearing with a meaningful opportunity to be heard, and a finding.

K. No specified procedure for removal of a magistrate of the Seattle Municipal Court has been established by Seattle Municipal Court rule, ordinance, or laws, of the State of Washington. Administration of the Court is outlined in Seattle Municipal Court Rule No. 13.

L. [William Paul Beighle] was appointed to the position previously occupied by [Tuberg] by appointment dated January 23, 1978.

■ Quo warranto is the proper statutory procedure to test the right of Tuberg and his successor, Beighle, to the position of magistrate. *State ex rel. Heilbron v. Van Brocklin,* 8 Wash. 557, 36 P. 495 (1894).

■■ Tuberg contends that his summary removal was in violation of article 5 of the Washington State Constitution. We agree.

Article 5 provides:

§ 1 IMPEACHMENT—POWER OF AND PROCEDURE. The house of representatives shall have the sole power of impeachment. The concurrence of a majority of all the members shall be necessary to an impeachment. All impeachments shall be tried by the senate, and, when sitting for that purpose, the senators shall be upon oath or affirmation to do justice according to law and evidence. When the governor or lieutenant governor is on trial, the chief justice of the supreme court shall preside. No person shall be convicted without a concurrence of two–thirds of the senators elected.

§ 2 OFFICERS LIABLE TO. The governor and other state and judicial officers, except judges and justices of courts not of record, shall be liable to impeachment for high crimes or misdemeanors, or malfeasance in office, but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust or profit, in the state. The party, whether convicted

or acquitted, shall, nevertheless, be liable to prosecution, trial, judgment and punishment *according to law*.

§ 3 REMOVAL FROM OFFICE. All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law.

The provisions of article 5 apply to all offices created or recognized by the constitution. *State ex rel. Evans v. Superior Court*, 92 Wash. 375, 159 P. 84 (1916).

The state constitution is the source for *all* judicial power of the State. The authority to establish judicial power in inferior courts is given to the legislature by the state constitution.

The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.

Const. art. 4, § 1. The Seattle Municipal Court was established by RCW 35.20 and is therefore a constitutional court. *State ex rel. Carroll v. Simmons*, 61 Wn.2d 146, 377 P.2d 421 (1962). Tuberg's office was authorized by former RCW 35.20.205[1] which permitted the municipal court to employ "judicial officers."

The parties stipulated that Tuberg was a "judicial officer" and this is also clear from the statute. The legislature denominated the new positions as "judicial officers" and provided that their duties were to be "judicial in nature."

---

[1]RCW 35.20.205 provided:

"Judicial officers—Hearing examiner. The judges of the municipal court may employ judicial officers to assist in the administration of justice and the accomplishment of the work of the court as said work may be assigned to it by statute or ordinance. The duties and responsibilities of such officers shall be judicial in nature and shall be fixed by court rule as adopted by the municipal court judges or fixed by ordinance of the city. The mayor may appoint the judicial officers as judges pro tempore pursuant to RCW 35.20.200: *Provided,* That the judicial officer need not be a resident of the city.

"To utilize the services of such judicial officers for the purpose of hearing contested matters relating to the interest of the city and its citizens and the operation of the various departments of the city, the city may by ordinance create the office of hearing examiner in the municipal court and assign to it judicial duties and responsibilities."

The statute further provided that the "judicial officer" may be appointed "judge pro tempore" and can serve as "hearing examiner" if that office be created by the city. Tuberg was appointed as a "judge pro tempore." As a "judge pro tempore," the "judicial officer" has all the powers of the regular judges. RCW 35.20.200. Tuberg was therefore a "judicial officer" both in law and in fact. *See* RCW 2.28.030.

Because Tuberg was a judicial officer in a position provided for by the legislature pursuant to the state constitution, article 5, section 3 applies. As stated by the Supreme Court:

> But the real answer to all these cases is to be found in the constitution, art. 5, § 3, which logically declares that all incumbents of offices created or recognized by that instrument, shall be subject to removal only in such manner as is provided by law. This section negatives the thought that officers holding any office recognized or created by the constitution . . . can be removed without, or in the absence of, a statute authorizing their removal. *This is especially so with reference to judicial officers. It would violate the very principle upon which the judicial function is made to rest, that of absolute freedom from fear or favor of the appointing power. It would not be so if a judicial officer were to be made the subject of the whim or caprice of the appointing power.*

(Italics ours.) *State ex rel. Evans v. Superior Court, supra* at 379–80.

Tuberg could only be removed in such manner as is provided by law, "clearly implying . . . a charge, a hearing, and a finding." *State ex rel. Evans v. Superior Court, supra* at 380. Neither the municipal court rules nor RCW 35.20.205 provided a procedure for removal.[2] Tuberg's removal was without authority.

Our Supreme Court recognized in *Spokane v. J-R Distribs., Inc.,* 90 Wn.2d 722, 727, 585 P.2d 784 (1978), that "the administration of justice and the operation of the courts is a matter of state rather than local concern." Thus,

---

[2]RCW 9.92.120 provides for forfeiture of public office upon conviction of any felony or malfeasance in office. Neither circumstance is present here.

especially where judicial administration is concerned, the power delegated to the municipal court must be exercised in the manner specified by the legislature.

Tuberg, as an officer within the context of article 5, section 3, of the Constitution of the State of Washington may only be removed from office for misconduct or malfeasance in office in such manner as may be provided by law. RCW 35.20.205 does give the municipal court broad authority to adopt rules concerning the responsibilities of judicial officers such as Tuberg. Consistent with article 5, section 3, rules may be adopted to provide that a failure to meet these responsibilities would make a judicial officer "subject to removal for misconduct or malfeasance in office". In the absence of an appropriate rule, Tuberg's summary removal without a formal charge and hearing was in violation of article 5, section 3 of the Washington State Constitution.

Reversed.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied February 17, 1981.

Review granted by Supreme Court April 17, 1981.