[No. 28180-5-II.   Division Two.   May 28, 2003.]

KATHLEEN BOAG, *Appellant*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*.

---

*Ben Shafton* and *William D. Robison* (of *Morse & Bratt*), for appellant.

*Deborah L. Carstens* and *Jerret E. Sale* (of *Bullivant Houser Bailey, P.C.*), for respondent.

HOUGHTON, J. — Kathleen Boag appeals from the trial court's order granting Farmers Insurance Company of Washington's motion for summary judgment and denying her motion for partial summary judgment. She argues that her insurance policy with Farmers conflicts with statutory requirements and that the court incorrectly interpreted the contract. We agree, reverse, and remand.

## FACTS

On April 30, 1999, Boag was injured in a motor vehicle collision. At the time of the accident, Farmers provided Boag's automobile insurance.

The insurance contract provided for personal injury protection (PIP):

**2. Income Continuation Benefits**

We will pay up to 85% of the insured person's loss of income from work, less income earned during the benefit payment period, subject to the following:

  a. The insured person must have a regular income from an occupation at which he or she was usually working at the time of the accident.

b. Coverage and payment periods begin 14 days after the date of the accident.

c. Coverage ends when the earliest of the following events occurs:

    (i)   when the Insured person is able to return to his or her usual work,

    (ii)  52 weeks after coverage begins,

    (iii) upon the death of the insured person,

d. The most we will pay the insured person is $700 per week with a maximum of $35,000.

e. The total combined amount any person can receive under sick leave, any other disability or loss of income benefit, and this coverage shall not be more than 85% of the insured person's weekly income.

Clerk's Papers (CP) at 26, 28-29.

At the time of the accident, the Bonneville Power Administration (BPA) employed Boag as a property disposal officer. Her average weekly wage was $937.80. She submitted a claim for PIP benefits under her insurance policy. Farmers paid her income loss claim from August 16, 1999, through May 11, 2000, for a total of $25,048.16.

On October 6, 2000, Boag requested additional compensation from Farmers under the PIP provision for income lost after the accident and before Farmers initiated payment on August 16, 1999.[1] In her request, Boag noted that she must repay the advanced leave either through working longer or by monetary repayment.

Boag explained her leave calculation as follows:

| Date Range | Type of Leave | Hours Used | Wk. Days |
|---|---|---|---|
| 5/1/99-5/15/99 | Accrued Sick Leave | 3 | 0.38 |
| | Advanced Sick Leave | 77 | 9.63 |
| | **Sub-Total** | **80** | **10** |

---

[1] The parties agree that under the policy, the payment period starts 14 days after the accident date.

| Date Range | Type of Leave | Hours Used | Wk. Days |
|---|---|---|---|
| 5/16/99-8/13/99 | Advanced Sick Leave | 163 | 20.38 |
| | Holiday Pay | 16 | 2.00 |
| | Credit Leave | 12 | 1.50 |
| | Annual Leave | 258.5 | 32.31 |
| | Advanced Annual Leave | 64 | 8.00 |
| | Leave [without] Pay | 6.5 | 0.81 |
| | **Sub-Total** | **520** | **65.00** |
| | **Grand Totals** | **600.00** | **75.00** |

CP at 21.

Farmers denied Boag's request, stating that the policy did not provide for compensation to "buy back" sick and annual leave. CP at 73. Boag sued Farmers to recover the disputed amount. She moved for partial summary judgment, asking the court to rule as a matter of law that her wage loss calculation was correct and that the policy covered her advanced leave. In an affidavit, she stated that she had "borrowed" her future leave and would have to pay it back, either by working for several more years or by buying it back. CP at 23. Farmers also moved for summary judgment.

The trial court denied Boag's partial summary judgment motion. The court reasoned that in its experience, the pay stubs from BPA reflected "borrowed" and "advanced" leave to be income to the employee. CP at 93. The trial court granted Farmers' motion for summary judgment and Boag appeals.

## ANALYSIS

### Standard of Review

We review an order on summary judgment de novo and engage in the same inquiry as the trial court. *Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999). Where there are no issues of material fact, we treat all facts and reasonable inferences in a light most favorable to the nonmoving party and affirm a summary judgment order if the moving party is entitled to

the judgment as a matter of law. *Enterprise*, 139 Wn.2d at 551-52; CR 56(c).

## Contract and Statutory Interpretation

Boag first contends that the policy language directly conflicts with the specific language of RCW 48.22.095, a provision that controls benefit limits for personal injury protection coverage and, thus, is not enforceable.[2] She claims that Farmers' policy does not adequately include the terms RCW 48.22.095(3) requires.[3] Specifically, she argues that Farmers should not have substituted "loss of income benefit," in part (e), for the phrase "income continuation benefits," as used in the statute. Appellant's Br. at 10-12. Instead, Boag argues that the statutory definition of "income continuation benefits" controls here.[4] Appellant's Br. at 12.

---

[2] Farmers argues that Boag's argument regarding statutory conflict was not raised below and cannot be asserted now. RAP 2.5(a). After reviewing the record, we conclude that Boag sufficiently, although not clearly, raised the argument before the trial court during oral arguments, in her memorandum in support of motion for summary judgment, and in her response to Farmers' opposition memorandum. Accordingly, we consider Boag's arguments.

[3] RCW 48.22.095 states in part,

Insurers providing automobile insurance policies must offer minimum personal injury protection coverage for each insured with maximum benefit limits as follows:

. . . .

(3) Income continuation benefits covering income losses incurred within one year after the date of the insured's injury in an amount of ten thousand dollars, subject to a limit of the lesser of two hundred dollars per week or eighty-five percent of the weekly income. The combined weekly payment receivable by the insured under any workers' compensation or other disability insurance benefits or other income continuation benefit and this insurance may not exceed eighty-five percent of the insured's weekly income.

[4] "Income continuation benefits" is defined as

payments of at least eighty-five percent of the insured's loss of income from work, because of bodily injury sustained by him or her in the accident, less

Boag also contends that the trial court incorrectly interpreted the insurance contract. She asserts that holiday pay, annual leave, credit leave, advanced annual leave, and advanced sick leave do not fall under the "any other disability or loss of income benefit" limitation of part (e) of the income continuation benefits provision. Appellant's Br. at 10.

Statutory interpretation is a question of law that we review de novo. *U.S. Tobacco Sales & Mktg. Co. v. Dep't of Revenue*, 96 Wn. App. 932, 938, 982 P.2d 652 (1999). Our fundamental duty is to ascertain and to carry out the legislature's intent, which we derive primarily from statutory language. *U.S. Tobacco Sales*, 96 Wn. App. at 938. If a statute is plain and unambiguous, we derive its meaning solely from its language. *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998) (citing *State v. Mollichi*, 132 Wn.2d 80, 87, 936 P.2d 408 (1997)). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *U.S. Tobacco Sales*, 96 Wn. App. at 938. To determine legislative intent, we may look to legislative history and other statutes. *Harmon*, 134 Wn.2d at 530.

In interpreting an insurance policy provision, we construe the entire contract to give force and effect to each clause. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). "The insurance policy must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser." *Mid-Century*

---

income earned during the benefit payment period. The benefit payment period begins fourteen days after the date of the accident and ends at the earliest of the following:

(a) The date on which the insured is reasonably able to perform the duties of his or her usual occupation;

(b) The expiration of not more than fifty-two weeks from the fourteenth day; or

(c) The date of the insured's death.

RCW 48.22.005(3).

*Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995). We should not engage in a "strained or forced construction" that would lead to absurd results. *Morgan*, 86 Wn.2d at 434. Nor should we interpret policy language in a way that leads to an extension or restriction of the policy beyond what is fairly within its terms, or render it nonsensical or ineffective. *Morgan*, 86 Wn.2d at 434-35.

■■ If the policy language is clear and unambiguous, we may not modify the contract to create an ambiguity. *Morgan*, 86 Wn.2d at 435. But where a clause in the policy is ambiguous, a meaning and construction in favor of the insured must be applied, even if the insurer intended another meaning. *Morgan*, 86 Wn.2d at 435. As with a statute, a policy provision is ambiguous when, on its face, two different reasonable interpretations can be drawn. *Morgan*, 86 Wn.2d at 435.

■■ Here, we must answer two questions: (1) does the substitution of "loss of income benefit" in the policy for "income continuation benefit," as stated in the statute, create a conflict between the insurance policy and the PIP statute? And (2) do annual leave, credit leave, advanced annual leave and advanced sick leave qualify as exemptions under either the statute or the policy?

Boag argues that the statutory language is clear on its face. She claims the statute dictates that workers' compensation, disability insurance benefits, income continuation benefits, and the insurance policy should be added together and payments should stop when the total exceeds 85 percent of the insured's weekly income.

She further asserts that "other" as used in the statute is consistent with her argument because "other income continuation benefit" refers to other PIP income continuation benefits, as one can receive benefits from two different PIP policies. And "other disability insurance benefit" means benefits that one can receive from long-term, short-term, or self-purchased disability insurance. Hence, she argues

"other" refers to the benefits that are received on top of workers compensation and can be subtracted by the insurance company when determining its income continuation benefit disbursement. And because Boag's leave did not fall into either disability insurance benefits or other PIP income continuation benefit, Farmers should compensate her for lost leave. We agree.

The word "other" as used in the statute refers to other PIP and other disability insurance policies. In looking at the statute as a whole, it is clear that "other income continuation benefit" refers to other PIP income continuation benefits, which is adequately covered in chapter 48.22 RCW. And "other disability insurance benefits" refers to other disability insurance benefits that can be purchased under chapter 48.20 RCW, a chapter that addresses disability insurance under the same title.

Here, Boag did not recover from any other PIP income continuation benefits. The types of leave she took do not qualify as either "disability or loss of income benefit" as stated in the policy or the statute. Also, her leave clearly does not meet the definition of "income continuation benefit" as defined in RCW 48.22.005(3). Finally, Boag contends that she will have to work several more years to offset her advanced pay. This indicates that she did not *accrue* any income, as she will have to pay back the amount she received to reinstate her annual and sick leave.[5]

The trial court erred in its interpretation of "borrowed" or "advanced" leave to mean income to the employee. And Farmers' policy conflicts with the PIP statute. Thus, we reverse the trial court and remand the cause to the trial court with instructions to grant Boag's motion for partial summary judgment.

---

[5] We do not address the issue of double recovery Farmers raises. Boag will not recover twice as she has to pay back the amount she received to reinstate her advanced leave.

## Attorney Fees

■ Boag requests reasonable attorney fees and costs on appeal. As she was wrongfully denied coverage, she is entitled to reasonable attorney fees and costs. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991) ("award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue").

Reversed and remanded for further proceedings.

QUINN-BRINTNALL, A.C.J., and MORGAN, J., concur.