[No. 30752-9-II. Division Two. December 21, 2004.]

RAY BIGGERS, ET AL., *Respondents*, v. THE CITY OF BAINBRIDGE ISLAND, *Appellant*.

860

*Dawn L. Findlay* (of *Inslee, Best, Doezie & Ryder, P.S.*) and *Stephanie E. Croll* (of *Keating, Bucklin & McCormack, Inc., P.S.*), for appellant.

*Traci L. Shallbetter* and *Dennis D. Reynolds* (of *Davis Wright Tremaine, L.L.P.*), for respondents.

¶1 HOUGHTON, J. — The city of Bainbridge Island (City) appeals from a trial court order lifting its moratorium on certain shoreline development. We affirm.

## FACTS

¶2 Forty-five miles of waterfront surround the City. Numerous homes and businesses sit along its shoreline and the area teems with wildlife.

¶3 In 1996, acting under the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, the City adopted its Shoreline Management Master Program (SMP). At that time, City staff recommended to the City Council's Operations Committee that it place a "temporary nearshore moratorium for all applications for Shoreline Substantial Development Permits and Shoreline Substantial Development Exemptions until the adoption of a revised Shoreline Master Program and Critical Areas Ordinance in late August 2002." Clerk's Papers (CP) at 414. The City's SMP did not authorize imposing a moratorium on development and it allowed property owners to apply for permits to build piers, docks, floats, and bulkheads.

¶4 On August 22, 2001, the City enacted Ordinance No. 2001-34, which imposed a moratorium through September 1, 2002, to preserve the status quo. On October 10, 2001, after holding public hearings and acting under RCW 35A.63.220 and RCW 36.70A.390, the City enacted Ordinance No. 2001-45, which placed a restriction on applications for new overwater construction (piers, docks, floats) and new shoreline armoring (bulkheads and revetments) because these structures had the "greatest potential to impact shoreline habitat." CP at 19.

¶5 Business owners and private citizens[1] (Citizens) sued for a declaratory judgment invalidating Ordinance No. 2001-45. On August 14, 2002, after a public hearing, the City enacted Ordinance No. 2002-29 and extended the moratorium through March 1, 2003. In response, the Citizens amended their complaint to include Ordinance No. 2002-29.[2]

¶6 Both sides moved for summary judgment on the moratorium's validity. The trial court issued a memorandum decision in which it determined that: (1) the moratorium was not valid as a de facto amendment to the City's SMP; (2) the City did not have implied authority to impose the moratorium under the SMA; and (3) even if the City had implied authority, its moratorium was invalid because it was an unconstitutional violation of Washington Constitution article XI, section 11 as a local law in conflict with the state's general laws. The trial court entered an order granting the Citizens' motion and the City appeals.

## ANALYSIS

■ ¶7 In reviewing an order granting summary judgment, we engage in de novo review, taking all facts and inferences in the light most favorable to the nonmoving party. *Boag v. Farmers Ins. Co.*, 117 Wn. App. 116, 121, 69 P.3d 370 (2003).

■ ¶8 We begin by noting that shoreline development commenced after June 1, 1971, must conform with the SMA and local government shoreline master programs.[3] *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 203, 884 P.2d 910 (1994);

[1] The plaintiffs include Ray and Julie Biggers; Andy Mueller d/b/a Mueller Construction; Craig and Sandy Powell d/b/a Sealevel Bulkhead Builders, Inc.; and Home Builders Association of Kitsap County.

[2] In February 2003, the City adopted Ordinance No. 2003-13 and extended the moratorium through September 1, 2003. In August 2003, the City adopted ordinance No. 2003-34 and extended the moratorium until March 1, 2004. The record before us does not indicate a further extension. But neither party raises mootness, and we address the issues before us.

[3] The SMA regulatory scheme requires that all local governments prepare an SMP for their shorelines. RCW 90.58.080(2).

*Bellevue Farm Owners Ass'n v. Shorelines Hearings Bd.*, 100 Wn. App. 341, 350, 997 P.2d 380, *review denied*, 142 Wn.2d 1014 (2000). The SMA seeks to protect fragile shorelines through appropriate utilization, protection, restoration, and preservation. RCW 90.58.020; *Bellevue Farm Owners Ass'n*, 100 Wn. App. at 350. We construe the SMA broadly to serve its underlying purpose of protecting and fostering proper use. RCW 90.58.020; *Bellevue Farm Owners Ass'n*, 100 Wn. App. at 350 (quoting RCW 90.58.020).

## Standing

¶9 The City first contends that two of the Citizens lack standing and their claims must be dismissed. The City asserts that the moratorium ordinances do not directly affect Sealevel Bulkhead Builders, Inc., or Home Builders Association of Kitsap County (HBA) and that they cannot seek a declaratory judgment.[4]

¶10 The Citizens sought a declaratory judgment regarding the validity of the ordinance. The Uniform Declaratory Judgments Act allows a party to ask the court to determine an enactment's authority. Ch. 7.24 RCW; *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 121 Wn. App. 601, 605, 89 P.3d 316 (2004). To claim standing, a party must allege a justiciable controversy based on allegations of substantial, rather than speculative or abstract, personal harm. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004); *Superior Asphalt*, 121 Wn. App. at 605-06.

¶11 Washington uses a two-part test to determine standing in a declaratory judgment action. *Grant County*

---

[4] Sealevel Bulkhead Builders, Inc., is a family-owned company based in Kingston. It primarily constructs single-family protective bulkheads, piers, docks, and other shoreline amenities. A substantial component of its business occurs within the City. HBA, an approximately 500-member Washington nonprofit corporation, comprises individuals and businesses that engage in Kitsap County land development. HBA seeks to ensure the proper implementation of laws relating to Kitsap County real property development, including development within the City. HBA implements that objective by directly participating in the public decision-making process through its officers, employees, and members.

*Fire Prot. Dist.*, 150 Wn.2d at 802. First, the interest to be protected must arguably fall within " 'the zone of interests to be protected or regulated by the statute . . . .' " *Grant County Fire Prot. Dist.*, 150 Wn.2d at 802 (quoting *Save a Valuable Env't (SAVE) v. City of Bothell*, 89 Wn. 2d 862, 866, 576 P.2d 401 (1978)). Second, the action challenged must have caused "injury in fact." *Grant County Fire Prot. Dist.*, 150 Wn.2d at 802; *SAVE*, 89 Wn.2d at 866-67.

■ ¶12 A justiciable controversy is an actual and not hypothetical dispute. *Superior Asphalt*, 121 Wn. App. at 606. A justiciable controversy exists if the parties have direct and substantial opposing interests in the dispute requiring a final and conclusive judicial determination. *Superior Asphalt*, 121 Wn. App. at 606.

■ ■ ¶13 Applying these criteria here, we first ask whether Sealevel and HBA have interests within the ordinance ambit. We agree that they do. The SMP protects the City's shoreline development. The City passed the moratorium intending to evaluate its shoreline development in order to plan for and prevent further shoreline deterioration. Thus, the moratorium seeks to protect the City's shoreline as required by the SMA. As such, the moratorium controls Sealevel's and HBA's island-based business opportunities.

¶14 Next, we must ask whether the moratorium causes Sealevel and HBA harm that is not speculative or abstract. *SAVE*, 89 Wn.2d at 866. Both Sealevel and HBA engage in land development and shoreline construction in the City. The record indicates that many HBA members, individually and collectively, will be specifically and perceptibly affected by the moratorium as it affects their personal and business interests. Under these legal tests, Sealevel and HBA have standing.[5]

---

[5] Moreover, HBA has standing under Washington's "association" three-prong test. That is: (1) its members would otherwise have standing to sue in their own right, (2) the interests that the organization seeks to protect are germane to its purpose, and (3) neither the claims asserted nor the relief requested require the

## Validity of the Moratorium

¶15 The City contends that the trial court erred in deciding that the City had no express or implied authority to impose the moratorium and that the moratorium conflicts with the state's general laws in violation of our state constitution. It asserts that RCW 35A.63.220 and RCW 36.70A.390 grant it broad authority to impose the moratorium.

■■ ¶16 A city exists and derives its authority and power from the state constitution and the legislature. "It has neither existence nor power apart from its creator, the legislature, except such rights as may be granted to municipal corporations by the state constitution." *City of Spokane v. J-R Distribs., Inc.*, 90 Wn.2d 722, 726, 585 P.2d 784 (1978).

¶17 The City argues that it retains broad authority to impose a moratorium ordinance under RCW 35A.63.220 and RCW 36.70A.390.[6] We disagree.

¶18 RCW 35A.63.220 provides:

A legislative body that adopts a moratorium . . . without holding a public hearing on the proposed moratorium . . . shall hold a public hearing on the adopted moratorium . . . within at least sixty days of its adoption, whether or not the legislative body received a recommendation on the matter from the planning agency. If the legislative body does not adopt findings of fact justifying its action before this hearing, then the legislative body shall do so immediately after this public hearing. A moratorium . . . adopted under this section may be effective for not longer than six months, but may be effective for up to one year if a work plan is developed for related studies providing for such a longer period. A moratorium . . . may be renewed for one or more six-month periods if a subsequent

participation of the organization's individual members. *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 213-14, 45 P.3d 186 (2002).

[6] As clearly expressed in the titles, chapter 35A.63 RCW regulates planning and zoning in code cities, and chapter 36.70A RCW regulates growth management of selected counties and cities. RCW 35A.63.220 and RCW 36.70A.390 apply to moratoriums as interim zoning controls within their respective chapters.

public hearing is held and findings of fact are made prior to each renewal.

¶19 The moratorium authority derived from RCW 35A.63.220 is limited to planning and zoning in code cities. It does not grant the City authority in this case because ordinances involving shoreline master programs and shoreline management regulations do not fall within the definition of zoning. *Sammamish Cmty. Council v. City of Bellevue*, 108 Wn. App. 46, 55 n.2, 29 P.3d 728 (2001), *review denied*, 145 Wn.2d 1037 (2002).

¶20 Similarly, RCW 36.70A.390 provides:

> A county or city governing body that adopts a moratorium . . . without holding a public hearing on the proposed moratorium . . . shall hold a public hearing on the adopted moratorium . . . within at least sixty days of its adoption, whether or not the governing body received a recommendation on the matter from the planning commission or department. If the governing body does not adopt findings of fact justifying its action before this hearing, then the governing body shall do so immediately after this public hearing. A moratorium . . . adopted under this section may be effective for not longer than six months, but may be effective for up to one year if a work plan is developed for related studies providing for such a longer period. A moratorium . . . may be renewed for one or more six-month periods if a subsequent public hearing is held and findings of fact are made prior to each renewal.

¶21 RCW 36.70A.390 is limited to growth management in selected counties and cities; it does not apply to shoreline management. Thus, neither statute grants the authority the City describes and its argument to the contrary fails.[7]

¶22 The City further argues that the Growth Management Act (GMA), chapter 36.70A RCW applies to shoreline

---

[7] The City also argues that chapter 35A.63 RCW, Planning and Zoning in Code Cities, provides it further authority to enact the moratorium ordinances. Because we may affirm the trial court's order on summary judgment on any ground raised before it, we do not address this argument. *Piper v. Dep't of Labor & Indus.*, 120 Wn. App. 886, 890, 86 P.3d 1231 (2004) (an appellate court may affirm a trial court on any theory supported by the record) (citing *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

development, to the exclusion of the SMA or the City's SMP. Again, we disagree.

¶23 The GMA refers to the SMA and provides in part:

(1) For shorelines of the state, the goals and policies of the shoreline management act as set forth in RCW 90.58.020 are added as one of the goals of this chapter as set forth in RCW 36.70A.020 without creating an order of priority among the fourteen goals. The goals and policies of a shoreline master program for a county or city approved under chapter 90.58 RCW shall be considered an element of the county or city's comprehensive plan. All other portions of the shoreline master program for a county or city adopted under chapter 90.58 RCW, including use regulations, shall be considered a part of the county or city's development regulations.

(2) The shoreline master program shall be adopted pursuant to the procedures of chapter 90.58 RCW rather than the goals, policies, and procedures set forth in this chapter for the adoption of a comprehensive plan or development regulations.

(3) The policies, goals, and provisions of chapter 90.58 RCW and applicable guidelines shall be the sole basis for determining compliance of a shoreline master program with this chapter except as the shoreline master program is required to comply with the internal consistency provisions of RCW 36.70A.070, 36.70A.040(4), 35.63.125, and 35A.63.105.[8]

RCW 36.70A.480.

 ¶24 Thus, the GMA states that the provisions of chapter 90.58 RCW take priority over the GMA as long as the provisions are internally consistent with a few specific statutes, none of which apply under these facts. The GMA clearly specifies that chapter 90.58 RCW (the SMA) governs the unique criteria for shoreline development. In other words, the SMA trumps the GMA in this area, and the SMA does not provide for moratoriums on shoreline use or development. The City's argument fails.[9]

---

[8] Section (3) of RCW 36.70A.480 was added in 2003, but this change does not affect our analysis here.

[9] We do not address the City's other arguments based on trial court error. *See infra* p. 865 and note 6.

## Attorney Fees

¶25 The Citizens seek attorney fees on appeal under RCW 4.84.370. That statute provides for awarding fees to the

> prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.

RCW 4.84.370(1).

¶26 Here, although the Citizens appealed from a land use decision, it was a land development moratorium and not a land use decision similar to those specified in the statute. We deny the Citizens' request for an award of attorney fees and costs.

¶27 Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

After modification, further reconsideration denied April 27, 2005.